LUCIEN E. CARTER, Appellant, *vs.* MARCUS E. HOLMAN, FRANK O. PETTIS, THOMAS H. COLLINS and AMANDA CORBY, Respondents.

1. *Mortgage—Agreement to give will create a lien, how far.*—It seems to be well settled, that an agreement in writing to give a mortgage, will create a lien upon the land specified in the agreement as against general creditors. (McQuie vs. Peay, 58 Mo., 58; Blackburn vs. Tweedie, *post* p. 505.) And it is proper to record such an instrument.

2. *Conveyance inter partes—Sheriffs' sales—Accuracy of description—What necessary in two cases.*—In the interpretation of deeds *inter partes*, courts are not inclined to insist upon that accuracy of description required in sheriffs' deeds or other transfers of property *in invitum.*

3. *Deed—Description of land in—Patent, ambiguity in—Identification of aliunde.*—In an agreement for a mortgage of land the property was referred to as "a farm owned by me in townships sixty-five and sixty-six of Worth county," * * * "south of Grant City, one and one-half miles." But neither section nor range were given. It appeared that the maker of the agreement lived in another county, and that the tract claimed to be that described by the deed had no house upon it, and was not known as the farm of the maker, nor generally understood to be his. *Held*, that the ambiguity in the description was patent, and that the uncertainty was not cured by the evidence *aliunde.*

### Appeal from Worth Circuit Court.

*L. E. Carter*, for Appellant.

I. The agreement was properly recorded. (Wagn. Stat., 277, §§ 24, 25 ; 2 Sto. Eq. Jur., §§ 1018–20 ; 1 Hil. Mort., 4 ed., p. 648, *et seq.*)

II. It was in equity a mortgage. (Hil. Mort., *supra ;* Read vs. Simmons, 2 Desaus., 552 ; Menude vs. Delaire, 2 Desaus., 564 ; Ex'r of Reed vs. Kenan, 3 Desaus., 74 ; Welch vs. Wusher, 2 Hill Chy., 167–170 ; Massey vs. M'Ilwain, 2 Hill Chy., 421–428 ; Dow vs. Ker, 1 Speed. Eq., 414–417 ; In the matter of Howe, 1 Page, 125–130 ; Bk. of Muskingum, vs. Carpenter, 7 Ohio, 21; Lake vs. Dodd, 10 Ohio, 415–425 ; Doe, Exr. Dan Burgess vs. Bank of Cleveland, 3 McLean, 140 ; Racinbillot vs. Sanservain, 32 Cal., 375 ; Peckham vs. Haddock, 36 Ill., 38 ; Sto. Eq. Jur., § 643, 8 ed., p. 61 ; Hill. Mort., vol. 2, 4 ed., p. 410, § 7 ; Moody vs. Wright, 13 Metc., 29, 30 ; Moody vs. Baker, 3 Mees & W., 195 ; Gale vs. Burnell, 7 Add. & Ell. N. R., 850 ; Hilly. Mort., 4 ed., vol. 1, p.

648; Id., p. 661, and note; Abbott vs. Godfrey, 1 Mann, [Mich.] 198; Davis vs. Clay, 2 Mo., 161; Doniphan vs. Paxton, 19 Mo., 288; Gill vs. Clark, 54 Mo., 415.)

III. The agreement is not void for uncertainty. If possible the intention of the parties as it appeared in the deed should govern its construction. (Abbott vs. Abbott, 51 Mo., 575; Lay vs. Wagoner, 47 Mo., 178; Bruensmann vs. Carroll, 52 Mo., 313; 2 Greenl. Cr. Tit. Deed, ch. 12, § 26; Rutherford vs. Tracy, 48 Mo., 325; Jamison, Tr. vs. Fopiano, 48 Mo., 194; Dawes vs. Prentice, 16 Pick., 435; Block vs. Trout, 50 Me., 364; Winslow vs. Patten, 34 Me., [4 Red.] 25; Biddle vs. VanDeventer, 26 Mo., 500; Jackson vs. Clerk, 7 Johns., 216; Loomis vs. Jackson, 19 Johns., 449; Worthington vs. Hylyer, 4 Tyng, 196; Cro. C., 548, 473, 447; Gibson vs. Bogy, 28 Mo., 478; 4 Greenl. Cr., 307.)

If the deed describes the property with sufficient certainty to show what was intended to be effected or conveyed, it is good. (Brown vs. Hayes, 21 How., 306; Fenwick vs. Gill, 38 Mo., 510; Hardy vs. Mathews, 38 Mo., 121; Rutherford Tracy, 48 Mo., 325; Cooley vs. Warren, 53 Mo., 166; Nelson vs. Broadhack 44 Mo., 596; Bruensmann vs. Carrol, 52 Mo., 313; 3 Wash. Real Prop., p. 344, 345, 346, 347, and authorities cited; Comm. vs. Roxbury, 9 Gray, 490; Schultz vs. Lindell, 40 Mo., 330, 355; Jennings vs. Brizeadine, 44 Mo., 335; Seaman vs. Hogeboom, 21 Barb., [S. C.] 398.)

The designation, together with the identification of the land *aliunde* was sufficient. (Doolittle vs. Blakesley, 4 Day, 265; Stanley vs. Green, 12 Cal., 148; Carson vs. Ray, 7 Jones L. [N. Cr.] 609; Abbott vs. Pike, 33 Me., 204; Cravens vs. Pettit, 16 Mo., 210; Walsh vs. Ringer, 2 Ham., 327; 4 Monr., 63; Clark vs. Powers, 45 Ill., 283; Dougherty vs. Purdy, 18 Ill., 207-8; Fitch vs. Gosser, 54 Mo., 267; Bates vs. Bower, 17 Mo., 550; Means vs. LaVergne, 50 Mo., 343; Hamilton vs. Doolittle, 37 Ill., 473; Prettyman vs. Walston, 34 Ill., 175; Jamaica vs. Chandler, 9 Allen, 159; Hart vs. Rector, 7 Mo., 531; Burnham vs. Banks, 45 Mo., 349; Stribler vs. Schreiber, 36 Vt., 345; Dodge vs. Nichols, 5 Allen, 548.)

IV. The requiting was notice. (1 Johns. Chy., 394.)

*Murat Masterson,* for Respondents.

I. The deed is void for uncertainty. (Boardman vs. Reed, 6 Pet. U. S.; Greenl. Ev., §§ 297, 301; Phill. Ev., 749, 780; Stark. Ev., 546; Jackson vs. Ransom, 18 John., 107; Thomas vs. Thomas, 6 John., 671; Jackson vs. Delaney, 13 John., 557; Haight vs. Pond, 10 Conn., 255; Bell vs. Dawson, 32 Mo., 87; Clemens vs. Rannells, 34 Mo., 583; Evans vs. Ashley, 8 Mo., 178; Wash. Real Prop., 3 Vol., 344; Nelson vs. Brodhack, 44 Mo., 603.)

II. The instrument was not a conveyance of realty, nor such an instrument as the law authorizes to be put on record. (Wagn. Stat., 277, § 24; p. 275, § 14.)

NAPTON, Judge, delivered the opinion of the court.

The only question in this case depends on the construction of the following instrument, which was duly acknowledged, signed and recorded in Worth county, on the 1st day of December, 1869. There was a subsequent levy on the property alleged to have been described, and a subsequent deed of trust; and the only question is, whether the paper hereinafter stated constituted a mortgage or lien, so as to give it priority over subsequent creditors and purchasers. The paper in question was as follows:

" Know all men by these presents, that I, Marcus E. Holman, of Andrew county, am held and firmly bound unto Lucien E. Carter, of St. Joseph, in the penal sum of $500, for the payment of which, well and truly to be made, I bind myself, heirs, executors," etc.

" The condition of this bond is, that, whereas the said Carter holds five promissory notes against me, of one hundred dollars each, dated July 27, 1869, and due respectively in four, five, six, seven and eight months after the date thereof. Now, if I, the said M. E. Holman, shall make, execute and deliver to said L. E. Carter a good and valid deed of trust or mortgage on a farm owned by me, free of all encum-

brance, in townships sixty-five and sixty six, of Worth county, State of Missouri, to secure the payment of three of said notes within the next thirty or sixty days, I being liable as the maker on all of said notes, and being unable to execute said mortgage at this time on said land, for the reason that I cannot recollect the number of the section and range of the same sufficiently to describe said land in a mortgage which I am to give said Carter, then these presents shall be null and void and of no effect, otherwise to remain in full force and virtue in law. The land herein described lies south of Grant City, about one or one and a half miles, to which I attach this as a lien, for the performance of this agreement," etc.

The plaintiff in his petition claims a lien on the south half of the south west quarter of section five, town. sixty-five, range thirty-one, in Worth county, as being the land described in the above obligation.

The bill of exceptions states, that the plaintiff gave evidence tending to show that the land described in his petition was the land intended to be described in the bond or writing obligatory heretofore set out. The evidence is, however, not set out in the bill of exceptions.

The defendant then read the deposition of Mrs. Corby, which need not be noticed further, as it simply stated that she knew nothing whatever personally of the transaction, having an agent, named Culligan, to manage all her pecuniary affairs.

Culligan was then examined. His explanation of the matter is this: As agent for Mrs. Corby he had a deed of trust on Pettis' land in the bottom in Buchanan county, for $850. Pettis and Holman were about to exchange lands, and Pettis being unable to pay off the mortgage on his land in Buchanan, proposed to Culligan to relieve his land in Buchanan of this lien, and take in lieu thereof a mortgage on the land in Worth county, which he understood to be the south half of the south west quarter of section five, township sixty-five, range 31, and the north half of the south half of lot No. 2, of the south west quarter of section seven, in the

same township and range. The proposal of Pettis was agreed to, upon condition that the land in Worth county was free from incumbrance.

A few days afterwards Pettis came to the witness' office, stating that he had been up to Grant City to look at the land, and searched for incumbrances, and gave him a certificate which the bill of exceptions states is marked " A.," but which is not in the record. This certificate, it may be inferred, was from the clerk of Worth county; but it is not copied, and, therefore as in the case of the plaintiff's evidence, leaves everything to conjecture.

It may be remarked here, that in cases tried by juries on instructions, or common law cases as they are usually termed, details of evidence are unnecessary, and therefore a mere statement of its tendency on either side is sufficient; but in chancery cases, where it is expected that the court will review the testimony, the evidence at large may be important.

The amount of the deposition of this witness was, that he had no knowledge of any incumbrance; he knew nothing of plaintiff's lien; he relied on the certificate above referred to, which he states was a certificate of the clerk of the county.

Holman, the defendant, lived in Buchanan county, about two miles south of St. Jo. He intended to give a lien on the east half of the north west quarter of section six, town. sixty-five, range thirty-one. He had no intention of giving a mortgage on what he calls his home place; that he afterwards sold that to Pettis. The reasons for this are explained, but immaterial. There was no house on this land, but part of it was cleared. He brought a written line from the clerk of the court of Worth county, stating that he had examined the books in Worth county, and found the Worth county land clear of incumbrance. He claimed two eighty acre tracts and one twenty acre tract, all derived from different sources.

Upon the testimony the court decided that the instrument of writing sued on, in itself, was not a mortgage or lien in law or equity, except perhaps as against Holman, and that the filing thereof and recording the same imparted no notice

to defendants, nor to any subsequent purchaser of any incumbrance; that said bond was not a conveyance or such an instrument as was authorized to be recorded. And the court gave final judgment for the defendants.

The doctrine of equitable mortgages, or liens arising from agreements or implied from a deposit of title deeds, is one of the creations of courts of equity which it is difficult to define or explain. It seems to be settled, however, that an agreement in writing to give a mortgage, will create a lien on the property specified in the agreement, as against general creditors.

Most of the cases in this country seem to be traceable to the case of Delaire vs. Keenan, (3 Desaus., 74, which is not here accessible) and Chancellor Desanessure referred to Lord Cowper's opinion in Finch vs. The Earl of Winchelsea, (1 Pierre Wil., 283.) Lord Cowper there said, "Articles made for a valuable consideration and the money paid, will, in equity bind the estate and prevail against any judgment creditor *mesne* between the articles and the conveyance;" and this is all that was said on the subject, for the chancellor decided that, as the consideration was inadequate, he would disregard the agreement as against a judgment creditor.

Upon this opinion of Lord Chancellor Cowper has been established the doctrine that an agreement for a mortgage has in equity a specific lien, and that the mortgagees were entitled to a preference over subsequent judgment creditors. (1 Paige, 130; 32 Cal., 375; 1 Hill. Mort., 648; McQuie vs. Peay, 58 Mo., 58; Adams Eq., 123 and note.)

It may be considered, therefore, that the bond in this case was properly recorded, as it purported to affect land in the county where it was recorded, and the only question is, whether the description of the land was sufficiently accurate to convey notice. The only description of the land is, "a farm owned by me in townships sixty-five and sixty-six, south of Grant City one or one and a half miles."

It seems from the testimony that the recorder gave a written certificate that there was no incumbrance on the land purchased by Pettis.

Courts have gone very far in supporting equitable mort-
gages, but in such cases there has been no dispute as to the
land intended to be charged with the lien.   It has also been
the intention of courts to support deeds *inter partes,* and in
their interpretation not to require the accuracy of description
required in sheriff's sales, or other transfers of property made
without the consent of the owner.   It is unnecessary to quote
authorities on this point. They are familiar to the profession,
and have been recognized in this court in several cases.

This court has gone very far also in supporting sales by
sheriffs, as may be seen by reference to the opinion in Mc-
Pike vs. Allman, (53 Mo., 551) and the authorities therein
cited and commented on.

The words in the bond, " the farm owned by me one and
one half miles south of Grant City," may be rejected as con-
veying no information whatever.   It appears very clearly that
Holman lived in Buchanan county, and that the place he de-
scribes as owned by him had no house on it, and was not at
all known in the neighborhood or generally understood to be
Holman's farm, or called by that name.   The only descrip-
tion of the land is, that it was in townships sixty-five and
sixty-six.   No section or range is given.   Townships contain
thirty-six sections of land, and each section contains six hun-
dred and forty acres.   Bacon says: " There be two sorts of
ambiguities of words; the one is *ambiguitas patens,* and the
other *latens.*   *Patens* is that which appeareth to be ambigu-
ous upon the deed or instrument; *latens* is that which seem-
eth certain and without ambiguity, for anything that appear-
eth upon the deed or instrument, but there is some collateral
matter out of the deed that breedeth ambiguity."

This description seems to fall within the explanation of a
patent ambiguity.   This land is described as in two town-
ships, either of which would contain thirty-six times six hun-
dred and forty acres, or upwards of twenty thousand acres.
It is impossible, on the face of the deed, to locate the land,
and so the clerk of the county decided, when he gave a cer-

tificate that there was no incumbrance on the land conveyed to the defendant Pettis.

And we think his opinion was right, and we shall therefore affirm the judgment of the Circuit Court; the other judges concur.