SILAS BENT, RECEIVER, Appellant, v. L. E. ALEXANDER, RECEIVER, Respondent.

February 12, 1884.

1. CONTRACTS — CONSTRUCTION OF. — A contract, clauses of which are inconsistent, must be construed according to the subject-matter and the motive; and the intention of the parties, as gathered from the whole writing, must prevail over the strictness of the letter.

2. RES JUDICATA. — Where a decree is made, carrying into effect an agreement, such agreement can not be attacked in another and collateral proceeding between the parties, on the ground that it is unfair and was made under a mistake of law.

APPEAL from the St. Louis Circuit Court, THAYER, J. *Affirmed.*

THOMAS T. GANTT, for the appellant.

JOHN D. POPE, for the respondent.

BAKEWELL, J., delivered the opinion of the court.

The Columbia Life Insurance Company was once called the Mound City Life Insurance Company. The name was

changed after the date of some of the transactions mentioned below. As the change of name is quite unimportant, it will save confusion, perhaps, to note this fact once for all, and call the company throughout this statement by the name which it bore at its dissolution.

The Columbia agreed with Charles H. Peck to pay him a large sum of money if he would successfully promote a certain scheme for transferring all the assets of the St. Louis Mutual to the Columbia, and reinsuring all risks held by the St. Louis Mutual in the Columbia. The transfer and reinsurance was effected on January 14, 1874, and on the next day the Columbia transferred to Peck, in payment for his services, securities worth about $100,000. On February 15, 1877, the St. Louis Mutual was dissolved. Bent and others were appointed its receivers, and afterwards Bent became its sole receiver. On October 17, 1877, the Columbia was dissolved, and Alexander was appointed its receiver.

The receiver of the Columbia threatened to proceed against Peck to recover the securities turned over to him ; the receiver of the St. Louis Mutual also claimed these securities. Peck effected a compromise for $25,000, of which half was paid to the receiver of the Columbia, and half to the receiver of the St. Louis Mutual, in consideration in each case of a full release. This compromise was approved by the circuit court, and the releases were executed by the receivers under orders of court.

The receivers of the St. Louis Mutual sued the receiver of the Columbia to rescind the contract of reinsurance and to recover the assets transferred. The defendant moved for security for costs ; but, in order to facilitate and expedite the decision of this controversy, the receivers of the two companies entered into a written agreement on May 2, 1878, to the following effect : The application for security for costs was withdrawn, and, to obviate the necessity of such security, it was agreed that if the finding of the referee

should be against the plaintiff, the receiver of the St. Louis Mutual, and this finding be approved, a decree should be entered for the defendant, the receiver of the Columbia, subject to the right of appeal; but that the decree should contain a clause by consent reserving to the plaintiff the right to present and have allowed a claim against the Columbia based upon the claims filed, or to be filed, before the receiver of the Mutual, for the aggregate of such claims allowed, which amount shall be allowed and paid *pro rata* out of the funds of the Columbia, in the final distribution of its assets. The amount to be allowed upon said claims to be paid to the plaintiff for distribution according to the orders of the court. If the decree is against the plaintiff and is affirmed, or in case of no appeal, then, in order to place in the plaintiff's hands enough to pay expenses and costs, if costs are adjudged against the plaintiff, the receiver of the Columbia is to place in the plaintiff's hands, in cash, $12,500, and three notes, namely: Eads' note for $5,000, Houston's for $15,000, and Goff's for $6,000. If the plaintiff gets judgment against the defendant, the proceeds of the notes are to be credited to the defendant. If the judgment is for the defendant, " *then the said sum of cash and notes shall be deducted from the aggregate amount of the claim to be allowed to the receiver of the St. Louis Mutual as herein stated.*" It was further agreed that the receiver of the Mutual assent to the Peck compromise, on the following terms: Peck is to pay the Columbia receiver $25,000, in full of the claim against Peck, and the plaintiff is to release to Peck all claim against him. This $25,000 is to belong to plaintiff if he succeeds in his action, and, on receiving $12,500 in addition to the $12,500 cash, then he is to credit the Columbia on his judgment against its receiver with the amount of securities which Peck received for his brokerage from the Mutual, and the interest thereon, if the referees allow interest, and in that case the Columbia is to have no credit for the $12,500 paid at the date of the agree-

ment.  The releases of Peck spoken of above were then executed.

The receiver of the Mutual was not successful in his action to recover from the Columbia the assets transferred when the Columbia reinsured the risks of the Mutual.  In that action, on April 2, 1879, a decree was made, afterwards amended on December 29, 1879, in accordance with the provisions of the agreement, which were based upon the theory of a judgment for the defendant in the matter of the recovery of the transferred assets.  This decree, after confirming the report of the referees, dismisses the plaintiff's bill, and then, after reciting the agreement between the parties to the action, set out above, proceeds as follows : —

" It is now further adjudged and decreed by consent of the parties to this cause, that for the purposes of carrying into effect the object and purposes of this agreement, and to enable plaintiffs herein to pay the costs of this suit and the necessary and proper expenses they have incurred in prosecuting the same, that the plaintiffs shall return to the said Alexander, receiver, etc., the said notes of Eads and Goff, and that the said Alexander, receiver, etc., shall advance and pay to the plaintiffs in lieu of said notes, and for the purposes aforesaid, the sum of $22,000, cash, to be applied, deducted, and credited in the same manner as it is provided in said agreement that the proceeds of said notes and cash should be applied.  And, whereas, Thomas C. Reynolds, Esquire, has been appointed a referee to value, pass upon, and classify the claims against the Columbia Life Insurance Company ; and, whereas, Thomas T. Gantt, Esquire, has been appointed referee to pass upon, and value, and classify the claims against the St. Louis Mutual Life Insurance Company ; and it may happen that there shall be a difference in the mode of valuation, or in the per cent upon which the policy reserves may be computed, or in the rules by which the claims are classified, it is ordered and adjudged that if such difference should occur, then, in apportioning

the whole fund among the two classes of claims for the purposes of such apportionment and division, the values of the two sets of policies shall be equalized, and calculated on the same basis, and up to the same time, and the same rules of classification shall be adopted ; and, to enable the said parties to carry this decree into effect without further delays or expense, it is further decreed that, if the said Alexander has not a sufficient amount of funds on hand to pay the above sum of $22,000, he is hereby authorized to execute his note as such receiver for said amount, drawing interest at eight per cent, giving as security such bills receivable and deeds of trust as may be in his hands as receiver. And it is further ordered, adjudged, and decreed that, when all the claims filed or to be filed against the receivers of the St. Louis Mutual Life Insurance Company shall have been passed upon by the referee of the said company, the said receivers of the St. Louis Mutual Life Insurance Company shall present against the receiver of the Columbia Life. Insurance Company their demand for the aggregate of the allowance made upon said claims, and the same shall be allowed against the said receiver of the Columbia Life Insurance Company, to be paid *pro rata* out of the funds of the Columbia Life Insurance Company in the final distribution of its assets. And it is further ordered that the plaintiffs pay the costs of this suit as the same have been heretofore, or may hereafter be, taxed herein.''

The account presented by the receiver of the Columbia as the advances made by it and its receiver to the receivers of the St. Louis Mutual is omitted from its place in the bill of exceptions. But there is no dispute that these sums had been received by the receivers of the St. Louis Mutual. Their liability as to the item of clerk hire was, however, denied ; and it was claimed that the sum of $12,500, mentioned in the decree, and which was one-half of the Peck

$25,000, was the property of the receivers of the St. Louis Mutual from the time they executed their release to Peck.

In accordance with the decree, Bent, receiver of the St. Louis Mutual, on May 28, 1883, moved the court to allow in his favor against Alexander, receiver of the Columbia, $1,064,084.56 and interest, being the amount of all the allowances made by the referees of the St. Louis Mutual and by the St. Louis circuit court, in favor of the policy holders of the Mutual against the receiver of the Columbia. This amount was allowed by the circuit court as prayed, but without interest, and the court reserved the questions : 1st, whether under the terms of the former decrees interest should be allowed from February 15, 1877, to October 17, 1877 ; 2nd, whether the allowance should not be reduced by the dividends already paid on the claims allowed by the receiver of the Mutual ; 3d, whether any sums received from the Columbia for its assets, and coming to the use of the Mutual, since February 15, 1879, ·should not be deducted from any dividends ordered to be paid by Alexander, on account of the allowance against him in favor of Bent.

Bent moved to modify the decree; and this motion and the questions reserved coming up to be heard, the motion to modify was overruled ; and, as to the questions, it was held, that the claim for interest should be disallowed ; that the allowance should not be reduced by the amount of the total dividend already paid by Bent ; and that the advances of money made by Alexander to the receivers of the St. Louis Mutual ought not, under the stipulation, to be deducted from the gross allowance of $1,064,084.56. The court found the sum of these allowances to be $63,600 ; and decreed that this sum should be treated as an advanced payment upon any dividend to accrue to the receiver of the St. Louis Mutual on account of said gross allowance. The

decree further determined other matters as to which policy holders were, and which were not, entitled to distribution of the special deposit fund of the Columbia.

It is contended by the appellant that the decree should have directed that the sum of advances should have been deducted from the gross allowance of a million and odd dollars; and also that the $12,500, received from Peck, should have been excluded from the estimate of advances made by the Columbia to the receiver of the St. Louis Mutual. Of the points presented by the record, these two alone are insisted upon here.

1. Ought the $12,500 advanced by the Columbia to the Mutual go into the account of advances?

We can not know, from anything in this record, whether the Mutual could have established a claim against Peck for the $100,000 of assets received by him, or whether, under its contract for the transfer of assets, the Columbia could have recovered this sum, or any part of it, from Peck. The amount recovered was the result of a compromise which Peck declined to make, except on the condition that both companies should execute to him a full release. It was, then, with the sanction of the circuit court, agreed between the receivers of these two companies, that the whole $25,000 received in this compromise with Peck should be paid to the receiver of the Columbia on the understanding that if the Mutual should recover against the Columbia in the pending suit for the conversion of the assets of the Mutual, this $25,000 should be a part of the recovery; but, if the judgment in that action was in favor of the Columbia, then the Mutual was to account to the Columbia for the $12,500 of the Peck money advanced to the Mutual for the purposes mentioned in the agreement. A final decree was had, dismissing the bill of the Mutual and carrying into effect the agreement between the receivers of the two companies. That decree treats this $12,500 as an advance for which the

Columbia is to receive credit. We think that it is too late now to argue that the $25,000, received from Peck, being the fruit of the release by the two companies, belonged to both in equal proportions; and that, when the Columbia advanced one-half of it to the Mutual, it was advancing to the Mutual its own funds. If the receiver of the Mutual made a mistake of law, and made an agreement injurious to the company for which he was trustee, he should have proceeded to have the decree set aside by which that agreement between himself and the receiver of the Columbia was carried into effect. It seems very plain, that for the purpose of this proceeding, we must assume that the *status* of the advance of the $12,500 is that given to it by the agreement and the decree of the circuit court. The decree was in its nature final and seems not to have been reversed, nor is it stated that it was ever appealed from.

2. The claim of the receiver of the Mutual against the receiver of the Columbia for one million and odd dollars being presented according to the agreement and decree, and allowed, ought the advances of the Columbia to the Mutual, found to amount to $63,600, to be deducted from the gross allowance, or from the *pro rata* dividend payable by the Columbia to the Mutual? This dividend of about four per cent will be about $40,000. If the advances are to be deducted from it, the Mutual owes the Columbia. But if the advances are to be deducted from the gross allowance of about one million sixty-four thousand dollars, that large allowance engulfs them, and leaves the Columbia indebted to the Mutual about as much as she would have been had no advance been made.

We are not to go behind the agreement and decree, and must endeavor to get at their meaning by the recognized rules for the interpretation of contracts. The language of the contract of May, 1878, is that: "If the judgment is against the plaintiffs, the sum of cash and notes shall be

deducted from the aggregate amount of claims to be allowed to the receiver of the St. Louis Mutual Life Insurance Company;" and the decree, after reciting the language of the agreement, says that, the advances shall be "applied, deducted, and credited in the same manner as provided in said agreement."

We are told by counsel for the appellant that no construction must be made against the words of the agreement; and if the words of the clause first copied above are the only language in the agreement and decree applicable to the subject, it is difficult to see how they could receive any other construction than that given to them by counsel for the appellant. But the agreement also provides that the claim against the Columbia, based upon claims filed before the receiver of the Mutual, "shall be allowed and paid *pro ratâ* out of the funds of the Columbia, in the final distribution of its assets;" and the decree says, "that when all claims filed against the receivers of the Mutual shall have been passed upon by the referee, the aggregate of these allowances shall be presented and allowed as a claim against the receiver of the Columbia, and the same shall be allowed against him," to be paid *pro rata* out of the funds of the Columbia in the final distribution of its assets.

Now, if advances made by the Columbia to the Mutual are first to be deducted from the gross allowance, and then the Mutual is to receive the same percentage on the balance as other creditors receive on their claims, the allowance to the Mutual is not paid *pro rata* with other claims against the Columbia, but the Mutual, and through the Mutual, the policy holders of the Mutual reinsured in the Columbia, get a larger percentage than the Columbia policy holders and its other creditors, if any.

It may be true that the holder of a policy in the Mutual for $1,000, reinsured in the Columbia, would receive no more money from the Columbia's assets than would a

policy holder in the Columbia.    But if he does not receive
the money he receives money's worth.    The Mutual
claimed that the contract of reinsurance should be re-
scinded and the assets transferred to the Columbia
restored to it, to be distributed among its policy holders
exclusively.    It could not effectually contest this question
with the Columbia without money, and as its reinsured
policy holders were, in any event, entitled to a share of
the Columbia's assets, an advance was made by the Co-
lumbia to the Mutual, which was applied by the Mutual
to the contest with the Columbia.    It is, of course, im-
material that the Mutual did not establish its claim ; to
assert it, it must have had money, and its policy holders
must have furnished the money, if it could not otherwise
be had, or the claim must have been abandoned without
a contest.

It is true that *quoties in verbis nulla est ambiguitas, ibi
nulla expositio contra verba fienda est.*    But this maxim
will not apply to a case where there is an apparent incon-
sistency between two clauses of the same contract.    We
must get at the intention of the parties from the whole writ-
ing ; and when that intent is plain it must prevail over the
strictness of the letter.    In giving to the contract a reason-
able construction according to the subject-matter and the
motive, the words must be made to serve the plain intention ;
and it is clear that where the language of the contract is not
throughout consistent with itself, if the contract is to be
construed at all, the words, in one place or the other, must
be made to bend to give effect to whatever meaning is at
last fixed upon the contract as the meaning of the parties.
2 Kent Comm.  555.

Why should the Columbia agree that the Mutual and the
Columbia should contest the right to certain assets claimed
and held by the Columbia at the expense of the assets, and
without risk to the policy holders of the Mutual?    That it

had no such intention appears from the fact, that when the receiver of the Mutual began his action, it required him to give security for costs.   We must look at the contract in all its parts, and endeavor to give to it a reasonable construction, according to the nature of the contract, the subject-matter, and the motive.   When this is done, it seems to me that the learned judge of the circuit court rightly held that the provision as to a *pro rata* distribution of the assets must have its full effect.   The advances made by the receiver of the Columbia to the receiver of the Mutual are to be regarded as a dividend paid to the policy holders, whose claims represent the gross sum, in advance of dividends paid to other claimants, and when the time should come to make a payment on the allowance of all these claims of policy holders, treating it as a single policy claim, then what had been advanced was to be treated as an anticipated payment. If any single policy holder of the Columbia had received an advance of money from its assets after its dissolution, it would be just that such advance should be deducted from his dividend.   In the same way, an advance to a body of policy holders whose claims constituted one demand should be deducted from that demand, but in such a way that they should be paid *pro rata* with other creditors of the Columbia; that is, it should be deducted from the amount of the percentage to which they would be entitled on their claim.

I do not say that the case is free from difficulty.   But, after careful consideration of the questions which seem to arise upon the record, I am of the opinion that the decree of the circuit court should not be disturbed.   Judge THOMPSON, having been of counsel for some of the policy holders in each of the companies concerned, did not sit.   With the concurrence of Judge LEWIS, the judgment is affirmed.