No. 12,508.

AUSTIN v. STEPHEN ET AL.

(300 Pac. 364)

Decided June 1, 1931.

Messrs. Bartels & Blood, Mr. Arthur H. Laws, for plaintiff in error.

Mr. Max P. Zall, for defendants in error.

*In Department.*

Mr. Justice Burke delivered the opinion of the court.

These parties appear here in the same order as in the trial court. Plaintiff in error is hereinafter referred to as Austin and defendant in error Sadie E. Stephen as Stephen. The interest, if any, of the other defendant in error does not appear, hence he is not further noticed.

Austin had title to, and possession of, certain lots in Denver. She and Stephen entered into a contract, hereinafter denominated "A," which the latter placed of record. Austin brought this action to quiet her title against the claims of Stephen under that contract. The cause was tried to the court on an agreed statement of facts, and to review a judgment against Austin for costs she brings error.

Under section 8, chapter 150, page 590, Laws of 1927, every instrument "affecting the title to real property" may be recorded. Hence the only question presented by this record is, Did "A" affect the title in question? If so the judgment must be affirmed; if not it must be reversed. Under certain stipulations made at the time of

the trial, and certain amendments of the pleadings, the title, if any, of Stephen was not submitted for determination.

"A" is either a mere personal contract, which granted nothing, or it is a contract of joint adventure which gives Stephen some interest in the property which is the subject thereof. No abridgment can do it justice, hence we quote it in full.

"Agreement.

"This Agreement, Made in duplicate this the 7th day of May, A. D. 1928, by and between Melissa Austin of the City and County of Denver, State of Colorado, of the first part, and Sadie E. Stephen, of the same place, of the second part; Witnesseth:

"Whereas, first party is the owner in fee simple of the North One-half (N ½) of Lot Forty-three (43) and all of Lots Fourty-four (44), Forty-five (45) and Forty-six (46), Block Four (4), Colfax Avenue Park Subdivision, in the City and County of Denver and State of Colorado; and,

"Whereas, said first party is about to begin the erection of a two-story apartment house thereon, hereafter referred to as the improvements;

"Now, therefore, in consideration of the premises and of the agreements herein, and for other good and valuable considerations, the receipt whereof is hereby confessed and acknowledged, it is agreed by and between said parties as follows:

"1. Second party is to furnish all plans and specifications and pay all charges for the superintendency necessary in the erection of said improvements.

"2. On the completion of said improvements by first party said building is to be offered for sale at the best price obtainable, and when sold the parties hereto are to participate equally in the sale price, after first party has deducted the cost of the lots and the net cost of said improvements.

"3. In the event said improvements are not sold forth-

with after completion, then the said premises are to be rented and the net income of said improvements and rentals is to be applied to a sinking fund controlled by both parties to this agreement, and is to be applied from time to time as the same mature on taxes, expenses, debts and claims of every kind and nature against the said premises until the same is completely paid out and the property stands free and clear of all taxes, liens, encumbrances, debts or claims of any kind or nature whatsoever. And it is agreed that there shall be no division of any moneys received from such income and rentals until the same is completely paid for, as herein in this paragraph provided, except upon the written consent, signed by both of the parties hereto, and said agreement of division must be signed in duplicate and attached to the duplicate copies of this agreement.

''4. It is understood and agreed that the term 'net income' referred to in paragraph three hereof means and is defined as that income or rentals from said improvements which will remain after deductions are made for general taxes, interest charged on loans outstanding against said improvements, insurance, water rent, and cost of upkeep of said improvements.

''5. It is further understood that the parties hereto will necessarily expend various and sundry items of moneys for legal services, payment of special taxes and incidentals, and it is agreed that each party is to keep a strict account and render to the other itemized statements of such expenditures and receipts therefor, and that said respective amounts are to be charged against the gross income of said premises at the completion thereof, and each party is to be reimbursed for all expenditures so made.

''6. Time is of the essence hereof in every particular and the covenants and agreements herein shall be binding upon and inure to the benefit of the heirs, executors, administrators and assigns of the respective parties hereto.

"In witness whereof the parties have executed this agreement in duplicate the day and year first above written.

> "Malissa Austin    (Seal)
> "Party of the First Part
> "Sadie E. Stephen  ·(Seal)
> "Party of the Second Part."

This record is more remarkable for what it conceals than for what it reveals. "A" is not abstracted and we have been obliged to go to the transcript for it. We are not advised whether this property has been sold, or if not why not, or if so, what has become of the proceeds. We have no way of knowing if it has been rented, or if not why not, or if so, what has become of the income. We do not even know that the contemplated improvements were constructed. About all that definitely appears is that the prophecy contained in paragraph 5 of "A" that the parties would "necessarily expend various and sundry items of moneys for legal services" has been fulfilled.

■ "When the agreement provides that both  \*  \*  \* the parties thereto shall contribute money to be used in the purchase of lands  \*  \*  \* to be sold for their mutual benefit in  \*  \*  \* specified proportions,  \*  \*  \* the transaction, in the absence of some special provision of the contract, indicating that the parties intended to assume some other relation, has, almost invariably, been construed to be one of joint adventure so as to give each of the parties  \*  \*  \* an interest in the property." 33 C. J., p. 845, §16.

■ "A joint adventurer who pays his share of the purchase price of real estate bought for the purposes of the enterprise acquires thereby a vested equitable interest in the land itself." Id. p. 854, §45. The same is true if the contribution is in services instead of money. Id. p. 860, §64.

■ "The law is well established that where the title to property purchased or acquired in connection with a

joint adventure \* \* \* is in the name of one of the parties, he holds it in trust for his associates." 15 R. C. L., p. 504, §6.

Since the complaint alleges that Stephen claims under "A," and there is neither allegation nor evidence to the contrary, we must assume that the building was built and that she performed her contract with respect thereto.

As against the foregoing statement of the general rule it is urged that "There must be something more [than mere profit sharing], some active participation in the enterprise; some control over the subject matter thereof or property engaged therein." 33 C. J., p. 847, §16. This requirement is met here. The building, which was to become a part of the property which was the basis of the joint adventure, was to be planned, and its erection supervised, by Stephen. The funds realized by sale or lease were to be under the joint control of the parties, and the contract was expressly extended to "the heirs, executors, administrators and assigns of the respective parties."

We have carefully examined all the remaining authorities cited by counsel, but have found nothing therein which militates against the simple rules of justice and equity above set out, or which requires distinction or justifies further comment. We see no escape from the conclusion that whatever else this contract did or did not do, it gave Stephen an equitable interest in the property in question, hence was one "affecting the title" thereto, and was recordable.

The judgment is accordingly affirmed.

MR. CHIEF JUSTICE ADAMS, MR. JUSTICE HILLIARD and MR. JUSTICE ALTER concur.