W. F. COOK and Ella E. Cook,
Plaintiffs-Respondents.

v.

TIDE WATER ASSOCIATED OIL COM-
PANY, a corporation, Defendant-
Appellant.

No. 7356.

Springfield Court of Appeals.
Missouri.

July 28, 1955.

Mann, Mann, Walter & Powell, Springfield, for defendant-appellant.

Lincoln, Lincoln, Haseltine, Forehand & Springer, Springfield, for plaintiffs-respondents.

STONE, Judge.

In this jury-tried action for damages on a bond, defendant appeals from an adverse judgment of $3,000. On June 14, 1924, W. W. and Mary L. Viles, the then owners of a larger tract at the southwest corner of South National Boulevard and East Grand Street in Springfield, Missouri, by warranty deed in conventional form and for a recited consideration of $1,500, conveyed to Independent Oil Company, Inc. (hereinafter called Independent), the corner lot 50 feet wide, north and south, and 180 feet deep, east and west (hereinafter referred to as the corner lot). On May 1, 1926, Independent executed an instrument captioned "Bond" (and hereinafter called the bond), but also referred to in the instrument itself as "this bond and agreement" and "this agreement," the pertinent provisions

of which are set out in the margin.[1] The bond was recorded on May 3, 1926. On April 1, 1929, Independent conveyed the corner lot to Tide Water Oil Sales Corporation, a Delaware corporation (hereinafter called Tide Water Oil Sales), "subject, however, to the conditions and restrictions contained in that certain bond executed by Independent * * *, as obligor in favor of W. W. Viles, as obligee, shown of record * * * in the Recorder's office of Greene county, Missouri." By warranty deed dated May 28, 1930, which restricted use to "residential purposes," the Viles conveyed to W. F. and Ella E. Cook, plaintiffs herein, the lot 50 feet wide, north and south, and 180 feet deep, east and west, adjacent to and south of the corner lot. "Immediately after" the Cooks had purchased their lot and prior to their construction of a seven-room brick dwelling thereon in 1930, Mr. Viles delivered the original bond to them.

On December 31, 1932, Tide Water Oil Sales conveyed to Tide Water Oil Company, an Oklahoma corporation (hereinafter called Tide Water of Oklahoma), four tracts in Greene County, Missouri, including the corner lot "subject, however, to the conditions and restrictions contained in that certain bond executed by Independent * * * as Obligor, in favor of W. W. Viles, as Obligee, shown of record * * * in the Recorder's office of Greene County, Missouri." On August 5, 1936, Tide Water of Oklahoma conveyed to Tide Water Oil Company, a Delaware corporation (hereinafter called Tide Water of Delaware), the same four tracts including the corner lot described as "a tract 50' by 180' * * * located at 1001 National Blvd. and being more particularly described in Deed recorded in Book 597, page 311, Records of Greene County, Missouri," that being the deed from Tide Water Oil Sales to Tide Water of Oklahoma. And, on November 30, 1936, Tide Water of Delaware conveyed to Tide Water Associated Oil Company, defendant herein, the same four tracts including the corner lot described in precisely

---

1. "The undersigned, the Independent Oil Company, its successors and assigns, a corporation * * *, acknowledges itself duly and firmly bound unto W. W. Viles, his heirs and assigns, in the sum of Three Thousand Dollars.

"The condition of said bond is that whereas * * * Independent * * * has purchased from the said W. W. Viles, the following described real estate situated in Greene County, Missouri (here follows description of corner lot conveyed by Viles to Independent in 1924), and it was agreed as part of the consideration therefor that this bond be executed.

"Now, Therefore, it is agreed that the Independent Oil Company, its *sucessors*, assigns and its grantees of said lot, may use said lot only for the following purposes: As a filling station * * *, but no additional building and no equipment or buildings for washing, repairing or housing motor vehicles shall be erected in connection with the business * * *.

"That the whole of said land may be used for the above permitted businesses or purposes, but no additional building or buildings shall be erected on said lot in connection therewith * * *.

"It is understood and agreed that this bond is given for the benefit and protection of the said W. W. Viles, his heirs and assigns and of the land and property located in Greene County Missouri purchased by Viles from H. N. Simons and wife.

"Now the said Independent Oil Company agrees to comply with the above provisions and the above bond is given to secure its compliance therewith.

"It is agreed that this bond is given to avoid making any restrictions in the deed conveying said lot, and that this bond and agreement shall not be *construed* as in any wise incumbering, limiting or restricting the fee simple title to said lot, and that the persons for whose benefit this bond is given shall in case of any violation of this agreement have as their sole remedy a suit or suits for damages on the bond up to the amount of the penalty thereof, and shall not have the right by injunction or otherwise to specifically enforce this agreement, or require a specific performance thereof. It is agreed that any recovery of damages for violation of this agreement shall not bar subsequent suits to recover damages for subsequent violations but that the total recovery for all violations shall be limited to the sum of Three Thousand Dollars."

the same language as that hereinbefore quoted from the prior conveyance from Tide Water of Oklahoma to Tide Water of Delaware.

In 1953, defendant constructed on the corner lot a concrete block building approximately 27 feet square and 13 feet high to be used for washing and lubrication of motor vehicles. The southwest corner of this building is about 12 to 15 feet from the front porch of plaintiffs' home. Three realtors testified that the reasonable market value of plaintiffs' property had been reduced by not less than $3,000 as a result of construction of the concrete block building and the sufficiency of the evidence as to damages is not questioned on appeal.

In determination of defendant's principal contention that its motion for directed verdict should have been sustained, the meritorious question is whether the bond constituted a covenant running with the land, which is binding upon and enforceable against grantees of Independent, the original covenantor, or is simply a personal or collateral covenant enforceable only against Independent. In considering this question, we must keep in mind that the covenant, i. e., the promise or agreement [Jenkins v. John Taylor Dry Goods Co., 352 Mo. 660, 179 S.W.2d 54, 58(3)], with which we are concerned, was that "no additional building or buildings shall be erected" on the corner lot. For a restrictive covenant to run with the land, " 'its performance or nonperformance must affect the nature, quality, or value of the property demised independent of collateral circumstances, or it must affect the mode of enjoyment, and there must be a privity between the contracting parties.' "[2] Or, as the initial requirement

has been otherwise stated many times since Spencer's Case, 5 Coke 16a, 77 Eng.Rep. 72, 74, the covenant must "touch or concern" the land demised. 14 Am.Jur., Covenants, Etc., Section 19, p. 495; Ibid., Sec. 20, p. 496; Thompson on Real Property (Perm. Ed.), 1955 Cum.Supp. to Vol. 7, Section 3620, p. 22.

A covenant of the character under consideration, when expressed in an instrument of conveyance, usually is regarded as in the nature of an easement reserved by the grantor in the land conveyed, appurtenant to his other lands [Bolin v. Tyrol Inv. Co., 273 Mo. 257, 200 S.W. 1059(1), L.R.A. 1918C, 869], is a property right [Strauss v. J. C. Nichols Land Co., 327 Mo. 205, 37 S.W.2d 505, 508(8)], and runs with the land. King v. St. Louis Union Trust Co., 226 Mo. 351, 126 S.W. 415, 419; Miller v. Klein, 177 Mo.App. 557, 160 S.W. 562, 566(6). As well-stated in Coughlin v. Barker, 46 Mo.App. 54, 61(1), the general rule long has been that "where the common grantor of two adjoining lots sells one and retains the other, and puts in the deed of the one which he sells a covenant against building in a certain way, which covenant is manifestly intended for the benefit of the lot which is retained, and he afterwards sells this lot to another the covenant passes to the assign of such lot as an appurtenance to it, or as an easement for the benefit of it, and such assign may enforce it against the owner of the other lot, whether he acquired the other lot immediately from the original vendor or through mesne conveyances, or by devise, descent, or otherwise * * *; provided he took with notice of it, actual or constructive." And, the same is true with respect to a written agreement restricting use of real estate,[3] for the fact

2. Hisey v. Eastminster Presbyterian Church, 130 Mo.App. 566, 109 S.W. 60, 61; Thompson on Real Property (Perm. Ed.), Vol. 7, Section 3620, pp. 107, 108. To the same effect, see also Epting v. Lexington Water Power Company, 177 S.C. 308, 181 S.E. 66, 70(6), 102 A.L.R. 773; Clement v. Willett, 105 Minn. 267, 117 N.W. 491, 492, 17 L.R.A.,N.S., 1094; Tiffany on Real Property (3rd Ed.), Vol. 3, Section 854, p. 455; American Law of Property (1952), Vol. II, Section 9.4, pp. 341, 342.

3. Porter v. Pryor, Mo., 164 S.W.2d 353, 354–355; Kraemer v. Shelley, 355 Mo. 814, 198 S.W.2d 679, 683(9), reversed on other grounds 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161, 3 A.L.R.2d 441; Rombauer v. Compton Heights Christian Church, 328 Mo. 1, 40 S.W.2d 545.

that a restriction is not created by deed but rests on contract does not affect the right to enforce it as a covenant running with the land.[4]

It seems plain to us that the covenant under consideration, i. e., that "no additional building or buildings shall be erected" on the corner lot, affected the use, enjoyment and value of that lot and "touched and concerned" it; and, privity of estate, which connotes a mutual or successive relationship to the same rights of property[5] and is essential to the running of a real covenant,[6] was present in the instant case both as between the original covenantor and covenantees, namely, Independent and the Viles, and as between the original covenantor and defendant. Consult 23 K.C. R. 3, 11–13. However, relying upon the well-established principle that restrictive covenants are not favored in law and that, where there is reasonable and substantial doubt as to the meaning thereof, such doubt is to be resolved in favor of the free and untrammeled use of property,[7] defendant's

counsel earnestly and ably argue that the bond was the personal obligation of Independent and did not run with the land. In considering this contention, we bear in mind that construction of a restrictive agreement is governed by the same general rules which are followed in construing any contract or covenant [Strauss v. J. C. Nichols

Land Co., supra, 37 S.W.2d loc. cit. 508; Porter v. Johnson, supra, 115 S.W.2d loc. cit. 533(11)]; that the construction of an agreement of doubtful meaning should be such as is fair and reasonable between the parties [Gabel-Lockhart Co. v. Gabel, 360 Mo. 518, 229 S.W.2d 539, 543(3); Industrial Bank & Trust Co. v. Hesselberg, Mo., 195 S.W.2d 470, 476(19)]—"a reasonable and natural construction, one that the parties would, as reasonable and intelligent men, be likely to make, and not a useless or whimsical contract resulting in no good to either party" [Jackson County Light, Heat & Power Co. v. City of Independence, 188 Mo.App. 157, 175 S.W. 86, 90(6)]; and, that "'(c)ommon sense and good faith are the leading characteristics of all interpretations.'" Veatch v. Black, 363 Mo. 190, 250 S.W.2d 501, 507; Paisley v. Lucas, 346 Mo. 827, 143 S.W.2d 262, 268.

Furthermore, "(t)he just interpretation of a contract arises on the whole subject-matter. It must be viewed from end to end and corner to corner, and all its terms pass in review; for one clause may modify, limit, or illuminate the other." Mathews v. Modern Woodmen of America, 236 Mo. 326, 139 S.W. 151, 155. The entire agreement must be considered in determining the meaning of each part thereof;[8] and, although effect should be given to every part of the agreement, if that be fairly and reasonably possible,[9] seeming contradictions

4. Swain v. Maxwell, 355 Mo. 448, 196 S.W.2d 780, 783(2); Porter v. Johnson, 232 Mo.App. 1150, 115 S.W.2d 529, 531(4). See also Irminger v. Wabash Ry. Co., Mo.App., 203 S.W. 660; Withers v. Wabash Ry. Co., 122 Mo.App. 282, 99 S.W. 34, 37(4).

5. Abington v. Townsend, 271 Mo. 602, 197 S.W. 253, 256; Crispen v. Hannavan, 50 Mo. 415, 418; American Law of Property, Vol. II, Section 9.5, pp. 353, 354; 14 Am.Jur., Covenants, Etc., Section 25, p. 501.

6. McCoy v. Wabash Ry. Co., Mo.App., 203 S.W. 249, 250(1); Restatement of the Law of Property, Vol. V, Section 534, p. 3205; 14 Am.Jur., Covenants, Etc., Section 20, p. 496.

7. Chiles v. Fuchs, 363 Mo. 114, 249 S.W. 2d 454, 456(4); Missouri State Oil Co. v. Fuse, 360 Mo. 1022, 232 S.W.2d 501, 506(4); Zinn v. Sidler, 268 Mo. 680, 187 S.W. 1172, 1174, L.R.A.1917A, 455; Schnider v. M. E. H. Realty Inv. Co., 239 Mo.App. 546, 193 S.W.2d 69, 74(5); Conrad v. Boogher, 201 Mo.App. 644, 214 S.W. 211, 214(1).

8. Johnson County v. Wood, 84 Mo. 489, 509–510; In re Collins' Trust Estate, 354 Mo. 614, 190 S.W.2d 259, 262(4); Truck Leasing Corp. v. Esquire Laundry & Dry Cleaning Co., Mo.App., 252 S. W.2d 108, 111(4).

9. Ott v. Pickard, Mo., 237 S.W.2d 109, 111 (3, 4); Fancher v. Prock, 337 Mo. 1119, 88 S.W.2d 179, 182(4); Myers v. Union

should be harmonized away to effectuate the underlying purpose of the parties as evidenced by the whole instrument.[10]

 But, notwithstanding the fact that all of the foregoing principles must be accorded their proper place, the primary and cardinal rule, which permeates and pervades the entire field of construction, is that the court should ascertain the intention of the parties and then give effect thereto unless it conflicts with some positive rule of law. That greater regard is to be accorded to the clear intention of the parties than to any particular language used in attempting to express that intention [Veatch v. Black, supra, 250 S.W.2d loc. cit. 507; Larson v. Crescent Planing Mill Co., Mo. App., 218 S.W.2d 814, 819(2)] is equally true in interpretation of restrictive covenants or agreements,[11] bonds,[12] and contracts generally. 17 C.J.S., Contracts, § 295a, p. 689. Where the language of an agreement is not consistent throughout (and we are not unmindful of the seemingly paradoxical statement in the bond under consideration that it "shall not be *constructed* as in any wise incumbering, limiting or restricting the fee simple title"), the intention of the parties, as gathered from the entire instrument, must prevail over the strict letter of the contract,[13] and "the words, in one place or the other, must be made to bend to give effect to whatever meaning is at last fixed upon the contract as the meaning of the parties." Bent **v.** Alexander, 15 Mo.App. 181, 190(1).

Viewing the bond in the light of the principles stated, and having due regard for the subject matter of the instrument and the apparent purpose sought to be accomplished thereby [Kansas City Structural Steel Co. v. Utilities Bldg. Corp., 339 Mo. 68, 95 S.W.2d 1176, 1177–1178(1), 106 A. L.R. 244], what was the intention of the parties and the meaning of the bond? In the first paragraph, "Independent Oil Company, *its successors and assigns,* * * * acknowledges itself * * * bound unto W. W. Viles, *his heirs and assigns."* Following prefatory recitals, "it is agreed that the Independent Oil Company, *its sucessors* (sic), *assigns and its grantees of said lot"* might use it "as a filling station" but that "no additional building * * * shall be erected in connection with the business." After repetition of this covenant in a succeeding paragraph, we find the clear, unequivocal and unambiguous declaration "that this bond is given for the benefit and protection of the said W. W. Viles, *his heirs and assigns and of the land and property * * * purchased by Viles from H. N. Simons and wife,"* which included the lot subsequently conveyed by the Viles to plaintiffs.

Acceptance and adoption of defendant's argument "that the covenants of the bond did not *prohibit* the construction of the

Electric Light & Power Co., 334 Mo. 622, 66 S.W.2d 565, 568(1).

10. State Mut. Life Assur. Co. of Worchester v. Dischinger, Mo., 263 S.W.2d 394, 401(5); South St. Joseph Live Stock Exchange v. St. Joseph Stock Yards Bank, 223 Mo.App. 623, 224 Mo. App. 40, 16 S.W.2d 722, 725(2); 17 C.J.S., Contracts, § 309, p. 726.

11. Wilson v. Owen, Mo., 261 S.W.2d 19, 23(2); Andrews v. Metropolitan Bldg. Co., 349 Mo. 927, 163 S.W.2d 1024, 1027 (2); Amitin v. Izard, Mo.App., 252 S.W. 2d 635, 639(4); Thompson on Real Property (Perm.Ed.), Vol. 7, Section 3634, p. 124; Ibid., Section 3620, pp. 107, 108; American Law of Property, Vol. II, Section 9.10, pp. 365, 366; Berry on Restrictions on Use of Real Property, Section 34, p. 52; Ibid., Section 39, p. 60; 14 Am.Jur., Covenants, Etc., Section 21, p. 498.

12. State ex rel. Jefferson County v. Sheible, Mo., 163 S.W.2d 559, 560(2); Weinhaus v. Massachusetts Bonding & Insurance Co., Mo.App., 210 S.W.2d 710, 714 (3); 8 Am.Jur., Bonds, Section 37, p. 722.

13. Ebbs v. Neff, 220 Mo.App. 1070, 282 S.W. 74, 77(4); City of St. Louis, to Use of Gilsonite Const. Co. v. McCully Const. Co., Mo.App., 184 S.W. 939, 941 (4); Royle Mining Co. v. Fidelity & Casualty Co. of N. Y., 126 Mo.App. 104, 103 S.W. 1098, 1099; Wilson v. Wilson, 115 Mo.App. 641, 92 S.W. 145, 147(2); Berry on Restrictions on Use of Real Property, Section 34, pp. 52, 53.

building" on the corner lot, and that the bond "left to Independent * * * and its assigns *the unrestricted right to use the land as they might see fit,*" would require us to say that the bond gave the owner of the corner lot *the right, at its option,* to do the very act which it had expressly covenanted not to do. In our opinion, the bond is not fairly and reasonably susceptible of any such construction. It reflects a clear and positive agreement that Independent, "its *sucessors,* assigns and its grantees of said lot," would erect no additional building thereon. Having obtained a bond permitting recovery of damages up to $3,000, *which was double the purchase price paid by Independent for the corner lot,* the Viles no doubt believed, not foreseeing the economic ravages of war and inflation, that the bond would afford adequate protection to them and their successors against breach of the covenant not to build. Although, by subsequent provisions of the bond, the beneficiaries of the promise were restricted, *as to the remedy* to be pursued in the event of breach, to a "suit or suits for damages on the bond up to the amount of the penalty thereof" [consult Robins v. Wright, 331 Mo. 377, 53 S.W.2d 1046, 1049(2)] and were foreclosed from enforcing the covenant in equity as they otherwise might have done [Restatement of the Law of Property, Section 528, p. 3185], this limitation of remedy for breach of the covenant extended no invitation and gave no license to breach it. For, by its terms, the bond was *"given to secure * * * compliance"* with the covenant not to build, and the "sole remedy" for breach was to be invoked, as the bond states, *"in case of any violation of this agreement"* or *"for violation of this agreement."*

■ If the parties had intended that the owner of the corner lot should have *the right* to erect an additional building or buildings upon payment of some sum, the parties should, and no doubt would, have said so in appropriate language, in which event erection of an additional building "would then not have been a violation of the contract, but a part of it." Wills v. Forester, 140 Mo.App. 321, 124 S.W. 1090, 1093(5, 6). It has been widely held that the right of a covenantee, his successors or assigns, to enforce a real or running covenant in equity does not depend upon his ability to maintain an action at law for damages;[14] and, considerations of logic, common sense and good faith suggest that conversely the right to maintain an action at law for damages should not be affected by a prohibition (as in the bond under consideration) against enforcement in equity. With all of the foregoing in mind, we are persuaded that, when considered as a whole, the bond evidences an overriding and controlling intention, which we should recognize and respect, that the burden of the covenant not to build should run with the corner lot and should be imposed not only on Independent but also on *"its sucessors* (sic), *assigns and its grantees of said lot"* [Restatement of the Law of Property, Vol. V, Section 531, Comment "c", p. 3197] and that the benefit should run with the adjacent lot for the protection of which the covenant manifestly was given. Cf. Pizzolato v. Cataldo, 202 La. 675, 12 So.2d 677, 680(6).

■ Defendant also complains that the bond was erroneously admitted in evidence, because "there was no proof of its execution" and it "was without consideration";

---

14. Consult, Phoenix Ins. Co. v. Continental Ins. Co., 87 N.Y. 400, 404–407; Mellon v. Oliver's Estate, 256 Pa. 209, 100 A. 796; Bradshaw v. Millikin, 173 N.C. 432, 92 S.E. 161, 163–165(8–10), L.R.A.1917E, 880; Wells v. First Nat. Exhibitors' Circuit, 149 Ga. 200, 99 S.E. 615, 618(2); Heinz v. Roberts, 135 Iowa 748, 110 N.W. 1034, 1036(2); Ropes v. Upton, 125 Mass. 258; McCurry v. Gibson, 108 Ala. 451, 18 So. 806, 808–809(4); Diamond Match Co. v. Roeber, 106 N.Y. 473, 13 N.E. 419, 423, 424(2); Zimmermann v. Gerzog, 13 App.Div. 210, 43 N.Y.S. 339, 341; Thompson on Real Property (Perm.Ed.), Vol. 7, Section 3620, pp. 107, 108–109; Restatement of the Law of Property, Vol. V, Section 528, Comment "f", p. 3188.

and, if this assignment of error were well taken, reversal would follow. There was no oral testimony concerning execution of the bond or the consideration therefor. However, Section 442.380 states that "Every instrument in writing * * * whereby any real estate may be affected, in law or equity, proved or acknowledged and certified in the manner herein prescribed, shall be recorded * * *," and Section 490.410 provides that "Every instrument in writing, conveying or affecting real estate, which shall be acknowledged or proved, and certified as herein prescribed, may, together with the certificates of acknowledgment * * *, be read in evidence, without further proof." (All statutory references herein are to RSMo 1949, V.A.M.S.) The recordability of use-restrictive agreements generally has been sustained [45 Am.Jur., Records and Recording Laws, 1954 Cum. Supp. to Vol. 45, Section 39, pp. 16–17; annotation 4 A.L.R.2d 1419, 1422–1425]; and, as will have become apparent from what we have said above, we have no doubt but that the bond in the instant case was an instrument *"affecting real estate"* within the meaning of the quoted Missouri statutes,[15] properly was accepted for record under Section 59.330, and imparted "notice to all persons of the contents thereof"

[Section 442.390] from and after its recordation on May 3, 1926.

 The bond was executed on behalf of Independent by its President and attested by its Secretary, who affixed its corporate seal. The certificate of corporate acknowledgment before a notary public was substantially in the form set forth in Section 442.210, and the bond bore the recorder's certificate of recordation in conventional language. Since the certificate of corporate acknowledgment was prima facie evidence of execution [Baker v. Baker, 363 Mo. 318, 251 S.W.2d 31, 37, 33 A.L.R.2d 1431], the bond was admissible under Section 490.410 without testimony aliunde concerning its execution; and, there being no controverting evidence, the presumption of due execution and delivery of the bond was not purely procedural but was a statutory inference with inherent probative value. Wilcox v. Coons, 359 Mo. 52, 220 S.W.2d 15, 19–20(6).

 There was no evidence to contradict or impugn the declaration in the bond itself that "it was agreed as part of the consideration (for the corner lot) that this bond be executed." Furthermore, the bond was an instrument importing consideration under Section 431.020[16] and, in the ab-

---

15. Among the instruments held to "affect real estate" within the meaning of recordation statutes are an agreement to give a deed of trust referred to also as "a bond" [Carter v. Holman, 60 Mo. 498, 503(1)], a power of attorney for conveyance of land [Muldrow v. Robison, 58 Mo. 331, 343–347(1)], a mortgage conveying a leasehold interest in land [Jennings v. Sparkman, 39 Mo.App. 663, 666–667(1)], a restrictive racial agreement [Kraemer v. Shelley, supra, 198 S.W.2d loc. cit. 683(9)], a contract to cut and maintain a drainage ditch [Irminger v. Wabash Ry. Co., supra, 203 S.W. loc. cit. 661], an assignment of rents [John McMenamy Inv. & Real Estate Co. v. Dawley, 183 Mo.App. 1, 165 S.W. 829, 831(2)], instruments conveying the right granted by ordinance to erect and operate an electric system [State ex inf. Chaney v. West Missouri Power Co., 313 Mo. 283, 281 S.W. 709, 714(7)], a deed containing building restrictions [Finley v. Glenn, 303

Pa. 131, 154 A. 299, 301(4, 5)], separate use-restrictive agreements [Clements v. Taylor, Tex.Civ.App., 184 S.W.2d 485, 488(5); Boyden v. Roberts, 131 Wis. 659, 111 N.W. 701, 705(2); Bradley v. Walker, 138 N.Y. 291, 33 N.E. 1079, 1080(1); Goodhue v. Cameron, 142 App. Div. 470, 127 N.Y.S. 120, 124(5)], a contract for development of real estate [Austin v. Stephen, 89 Colo. 177, 300 P. 364], and an assignment by lessee of sum payable from proceeds of sale of oil produced [Stone v. Wright, 10 Cir., 75 F.2d 457, 460(2)]. Compare Wearen v. Woodson, Mo.App., 268 S.W. 648, 649 (2), and State ex rel. Shiek v. McElhinney, 190 Mo.App. 618, 176 S.W. 292, 293 (1), holding that suits to enforce building restrictive covenants *affect* title to real estate, within the meaning of venue statutes, although title is *not directly involved.*

16. Montgomery Co. v. Auchley, 92 Mo. 126, 4 S.W. 425, 426(1); O'Byrne v. Mc-

sence of evidence to the contrary, a sufficient consideration is presumed.[17] However, we are unable to follow and accept defendant's contention, for which no authority is cited, that, if the bond was an instrument importing consideration under Section 431.020, it necessarily was a personal or collateral obligation of Independent.

We conclude that the trial court did **not** err in admitting the bond in evidence and that defendant's motion for directed verdict and after-trial motion for judgment [Section 510.290] properly were overruled. The judgment is affirmed.

McDOWELL, P. J., and RUARK, J., concur.

Cormick, 230 Mo.App. 520, 92 S.W.2d 1005, 1007(4); Wulze v. Schaefer, 37 Mo.App. 551, 553.

17. Missouri Wesleyan College v. Shulte, 346 Mo. 628, 142 S.W.2d 644, 647–648 (5); Scottish Rite Temple Ass'n v. Lucksinger, 231 Mo.App. 486, 101 S.W. 2d 511, 512–513(1, 2); Shelton v. St.

Louis & S. F. R. Co., 131 Mo.App. 560, 110 S.W. 627, 630(4). Compare Travelers' Ins. Co. v. Beagles, 333 Mo. 568, 62 S.W.2d 800, 801(2); Smith v. Ohio Millers' Mut. Fire Ins. Co., 330 Mo. 236, 49 S.W.2d 42, 45(1); Brandt v. Manson, Mo.App., 207 S.W.2d 846, 852(3); Gershon v. Ashkanazie, 239 Mo.App. 1012, 199 S.W.2d 38, 46(7).