Louis A. Mueninghaus, Jerry O'Neil, James P. Hyde, Mrs. M. Schuerfield and Louis Berkin, Appellants, v. Julia P. James, Joseph Frank Haddock and Carrie Haddock, His Wife.—24 S. W. (2d) 1017.

Division Two, February 19, 1930.

768

*Albert C. Davis* and *John B. Sullivan* for appellants.

*Keil & Keil* and *Frank Coffman* for respondent Julia P. James.

*Neuhoff & Millar* for respondents Joseph Frank Haddock and Carrie Haddock.

WHITE, J.—The plaintiffs filed in the Circuit Court of the City of St. Louis, November 10, 1927, their first amended petition as follows:

"Plaintiffs, leave of court being first had and obtained, for their amended petition against the defendants state that at all the time and times hereinafter mentioned, Joseph Frank Haddock and Carrie Haddock were husband and wife, and are residents of the County of St. Louis and State of Missouri; that the defendant Julia P. James is a person of colored or negro blood, and is a resident of the city of St. Louis, Missouri.

"Plaintiffs further state that on or about the 30th day of January, A. D. 1923, the defendants Joseph Frank Haddock and Carrie Haddock, his wife, were in the possession of, and were the owners of, certain tract or parcel of land situated in the city of St. Louis, State of Missouri, described as follows, to-wit:

"South five (5) feet, lot eight (8), and north thirty (30) feet, lot nine (9), block five (5), Aubert Place, fronting thirty-five (35) feet east line of Bayard Avenue by a depth east one hundred and seventy (170) feet to an alley, and in city block 3771, and known as number 1228 Bayard Avenue.

"That the said defendants, the said Joseph Frank Haddock and Carrie Haddock, his wife, being desirous of restricting the said real estate above described, made and entered into a contract and agreement with plaintiffs and one C. F. Fugate, as follows, to-wit: .

" 'We, the undersigned owners of the property as noted opposite our names, agree to sign the covenant as approved by the Fountain Park Improvement and Protective Association for the purpose of restricting the sale of said property to undesirable people and certain undesirable businesses, as per the following paragraphs noted in said covenant:

" 'First. Erect, maintain, operate or permit to be erected, maintained or operated any slaughter house, junk shop or rag-picking establishment on any of the parcels of land belonging to parties of first part and hereinabove described.

" 'Second. Sell, convey, lease or rent to a negro or negroes, or deliver possession to or permit to be occupied by a negro or negroes (no matter how the right to occupancy or title shall be attempted to be acquired) any of the said parcels of land belonging to parties of the first part and hereinabove described, or any part thereof or any interest therein.'

"Said agreement is herewith filed and marked 'Exhibit A' and made a part hereof.

"Plaintiffs further state that the said C. F. Fugate, who signed said contract with plaintiffs and defendant Joseph Frank Haddock,

is a non-resident of the State of Missouri, and beyond the jurisdiction of this court, and cannot be made a party plaintiff or defendant and has no interest in the subject-matter of this action by reason of the fact that long prior hereto he has sold the real estate referred to in the agreement hereinbefore designated as Exhibit A, and that said sale was not in violation of said agreement.

"Plaintiffs further allege that they and each of them signed the covenant as approved by the Fountain Park Improvement and Protective Association for the purpose of restricting the sale of said property, as aforesaid, but that the defendants Joseph Frank Haddock and Carrie Haddock, his wife, failed, neglected and refused to sign said covenant as they had agreed with plaintiffs that they would do.

"Plaintiffs further allege that the defendants Carrie Haddock and Julia P. James had notice of the agreement aforesaid of the said Joseph Frank Haddock prior to the conveyance by the said defendants Joseph Frank Haddock and Carrie Haddock to the said Julia P. James.

"That thereafter, in violation of the said agreement to sign said restrictive agreement, the said Joseph Frank Haddock and Carrie Haddock, by their deed dated October 22, 1926, and duly recorded in the office of the Recorder of Deeds in the city of St. Louis and State of Missouri, in book 4557, page 105, conveyed to the defendant Julia P. James the above-described real estate known as No. 1228 Bayard Avenue, City of St. Louis, Missouri, and placed the said Julia P. James in possession thereof and she now occupies the same in violation of said restrictive agreement.

"That by reason of said conveyance and occupancy of said property by the said Julia P. James as aforesaid, the value of plaintiffs' property has greatly depreciated and has been damaged; that plaintiffs have no adequate remedy at law for the redress of the wrongs herein alleged.

"Wherefore, plaintiffs pray a decree that said deed from said Joseph Frank Haddock and Carrie Haddock to the said Julia P. James be declared fraudulent and void and for naught held, or that said deed be held to be subject to the hereinabove set-forth restriction; that the said Joseph Frank Haddock and Carrie Haddock, his wife, be ordered and adjudged to execute said restrictive agreement according to their agreement with the plaintiffs; that the plaintiffs have and recover of the defendants the sum of five thousand dollars ($5,000) damages, and for such other and further relief in the premises as to the court may seem meet and proper, and for costs."

To this petition defendant Julia P. James filed a separate demurrer. Also Joseph Frank Haddock and Carrie Haddock filed a

separate demurrer. On November 21, 1927, the Circuit Court of the City of St. Louis sustained said demurrers. Each demurrer was on the ground that the amended petition shows on its face a defect of parties; that the petition does not state facts sufficient to constitute a cause of action, and several other grounds. The plaintiffs declining to plead further, judgment was entered in favor of the defendants, from which judgment the plaintiffs appealed.

I. The case is treated throughout as if the petition attempted to state a cause of action upon a covenant, not set out, which the defendant Haddock, it is alleged, *agreed to sign*. It is alleged that he agreed to sign a certain covenant which would provide that defendants should not convey, lease or rent to a negro or negroes the ground described in the petition. That covenant was to be approved by the Fountain Park Improvement and Protective Association. Nothing is alleged as to what else, or under what conditions, or for what consideration said covenant, so approved and to be signed, should contain. The plaintiffs have stated no cause of action on the covenant, whatever its terms and conditions, because defendants never signed it.

The only cause of action that could possibly arise in favor of the plaintiffs would be the failure of the defendants to sign that covenant which Haddock agreed to sign. The plaintiffs' cause of action must be on the contract actually executed. They might sue the defendant Joseph Frank Haddock for damages, for failure to sign the covenant, for he was the only one who signed the agreement to sign the covenant. His wife did not sign it and neither did the colored person objected to, Julia P. James. Possibly they might have had a cause of action in specific performance against Joseph Frank Haddock if the petition had stated a sufficient consideration. But they could have no cause of action against Carrie Haddock nor Julia P. James because they signed no agreement.

II. Even if the plaintiffs had a right to sue on the covenant which defendants never signed, the petition does not allege a consideration which would make the contract binding. It simply alleges that the defendants had certain property, describing it, in the city of St. Louis, and that they agreed to sign a covenant embodying certain restrictions, and that the plaintiffs signed said covenant. The appellants cite authorities in support of their position to the effect that mutual promises of parties affected in the same way furnish a consideration for the enforcement of the performance by one as against the other. As applied to this case, if the plaintiffs had real estate in position to be

protected by the covenant mentioned, the agreement of the plaintiffs to refrain from selling or leasing to negroes would be a consideration for a like promise of defendants. But the petition nowhere states that the plaintiffs had any property to be affected by the operation of the covenant, or that they expected to acquire any which would be affected by it. Nor is there any suggestion anywhere in the petition that the defendants received or were to receive any sort of consideration for entering into the covenant. Often it has been held by this court that a contract not under seal and not coming within the provisions of the Negotiable Instrument Act must have a consideration, and an action upon it must plead a consideration. See Swift v. Central Union Fire Insurance Company, 279 Mo. 606. That case was upon a parole agreement, but the subject is treated at length and the authorities cited. The general rule is thus quoted, l. c. 610:

" 'If the contract in suit is *under seal* it imports a consideration and none need be alleged, and the same is true if the instrument sued on is negotiable according to the law merchant. . . .

" 'But the consideration is an essential part of a contract, and, in the absence of statutory relief from the rule, a party declaring on a contract, which at common law does not import a consideration, must fully and truly state the consideration as well as the promise founded on it, and must prove it as laid.' "

This quotation is from 13 Corpus Juris, 722. The opinion quotes also from Chitty's Treatise on Pleading to the same effect, and from Boone on Code Pleading it quotes, l. c. 611: "Where a consideration is not implied, it is the very gist of an action founded upon contract, and must be specially averred."

The appellants, however, claim that the contract, being in writing, imports a consideration. Appellants cite a number of cases under that contention, and quote from Montgomery v. Montgomery, 142 Mo. App. l. c. 486: "As the contract sued upon in this case is in writing, signed by the defendants, it imports a consideration, and it was, therefore, not necessary for the plaintiff to plead a consideration in her petition." That ruling is contrary to the very statute which is cited in its support, Section 2160, Revised Statutes 1919, as follows:

"All instruments of writing made and signed by any person or his agent, whereby he shall promise to pay to any other, or his order, or unto bearer, any sum of money or property therein mentioned, shall import a consideration, and be due and payable as therein specified."

Neither the contract signed by Haddock nor the alleged contract which he agreed to sign comes within the terms of that section.

Appellants cite Section 2159, which abolishes private seals in all instruments, conveyances and the like, which theretofore were required by law to be under seal. Under the common law a contract under seal imports a consideration, and the appellants apparently have reached the conclusion that contracts, which formerly were required to be under seal, still import a consideration notwithstanding the seal is abolished. Even if the contract sued on here was one which at common law was required to be under seal, when the seal was abolished by Section 2159, the incidents and presumptions attending a contract executed under seal were abolished. That was the plain legislative intention, because Section 2159 is followed immediately by Section 2160, quoted above, which sets out the kind of instruments which import a consideration. This contract is not one of them.

III. Another peculiar situation arises here. Julia P. James, defendant, is not a party to any contract. She is not bound by any contract and the allegations of the petition show that the title to the property involved is vested in her. The plaintiffs have no cause of action against her merely because she knew that Joseph Frank Haddock had agreed to sign a contract, but had not signed it, by which he was to agree not to vest her with title to the property. The plaintiffs could not be awarded $5,000 damages or any other sum as against Joseph Frank Haddock, the only signer of the agreement to sign the contract sued on, because no facts are alleged to show that plaintiffs were or could be damaged in any amount.

They could not have specific performance as prayed because it would afford them no relief; the mischief was already done and the question is moot. They could not have cancellation of the deed to Julia P. James, for neither she nor Carrie Haddock signed the agreement to sign the contract which plaintiffs claim was violated.

The judgment accordingly is affirmed. *Blair, P. J.,* concurs; *Walker, J.,* absent.