EMMA PICKEL, BERNARD G. PICKEL, IDA K. GARCIA, GEORGE A. PICKEL, ESTELLE PICKEL, EDWARD C. PICKEL and LUCILLE PICKEL v. O. J. McCAWLEY, JAMES P. BLAKE, WILLIAM L. BECKMANN, BERNARD F. DICKMANN, WILLIAM W. BUTTS, CHAUNCEY P. HEATH, WILLIAM H. PROETZ, PETER A. WILTZ, President of Property Owners' Association, MICHAEL J. O'BRIEN, Secretary of Property Owners' Association, PETER A. WILTZ, JETTA C. WILTZ, BESSIE MULLANEY, ANNIE LANDAU, MORRIS LANDAU, MARY BRZOZOWSKI, Otherwise Known as BOWSKI, ALEXANDER BRZOZOWSKI, Otherwise Known as BOWSKI, GENEVA INVESTMENT COMPANY, ROSA WALTERS, WILLIAM F. WALTERS, LOUIS CICARDI, JR., Administrator, and JAMES R. TIERNAN, Appellants.—44 S. W. (2d) 857.

Division Two, December 1, 1931.

*Frank C. O'Malley* for appellants.

*Banister, Leonard, Sibley & McRoberts* for respondents.

WESTHUES, C.—Plaintiffs on the 19th day of June, 1927, filed an amended petition in the Circuit Court of the City of St. Louis, asking for the removal of restrictions that were placed on their property by reason of a restriction agreement dated the 12th day of February, 1924, and filed for record March 11, 1924. The petition charges that in the year 1923, the property owners of the district on both sides of Finney and Cook avenues from Grand Avenue on the east to Vandeventer Avenue on the west, decided to enter into a restriction agreement to prevent negroes from buying or obtaining any of the homes within the boundaries of the district and to preserve the district for the Caucasian race; that meetings were held by the property owners within the district of Finney Avenue and Cook Avenue, with a view to perfecting an organization to be known as "Property Owners Association;" that a president was elected at one of these meetings; that the plan was to have the entire district restricted; that the plaintiff, Emma Pickel, and others, signed the agreement under the inducement, representation and with the understanding that all of the property owners in the entire district or neighborhood, and particularly in the two blocks on both sides of Finney Avenue between Vandeventer and Grand Avenue, should and would sign the restriction before the same or any of such restrictions would become binding, or be recorded. Plaintiffs further allege that the officers of the association placed on record the paper signed by plaintiff, Emma Pickel, and others, in violation of the agreement and understanding with plaintiff, Emma Pickel, and other property owners in said district, that the paper would not be filed for record until all of the property owners of the district had signed the agreement; that the paper filed for record does not contain the signatures of all the property owners, even in the one-half block in which plaintiffs' property is located. That the filing of this paper was done through fraud and misrepresentation and constitutes a cloud on the title and estate of plaintiff, Emma Pickel. Plaintiffs further allege that since the time it was proposed to restrict the neighborhood against negroes, negroes have come into the district and now occupy practically every home and business within the entire district, excepting the north side of Finney Avenue between Krum Avenue and Spring Avenue, constituting one-half

block, wherein plaintiffs' and defendants' property is located; that the whole neighborhood is now a colored section and plaintiff's property is completely surrounded by colored inhabitants. The petition further states that according to the plan as originally outlined the association recorded restriction agreements similar to the one placed on plaintiffs' property covering the property on both sides of Cook Avenue immediately north of plaintiffs' property, but that these restrictions have been abandoned by all parties concerned; that the majority of the owners of property in the block in question on the north side of Finney Avenue are now opposed to any restrictions on their property against negroes; that plaintiff Emma Pickel is a life tenant of lots seven and eight in block two of John E. Cooks' Subdivision to the City of St. Louis, Missouri, and in block 3737 of said city; the other plaintiffs are the owners of the remainder in fee; that the restriction covenant on record prevents plaintiffs from disposing of their property to negroes and that it is impossible to sell the property at any fair price to white people because the neighborhood is now a colored section. Plaintiffs asked that the paper filed of record be declared null and void.

Defendants filed an answer in which they admitted the existence of the restrictions, but denied the other allegations of plaintiffs' petition. Defendants also filed a cross-petition asking the court to enforce the restrictions and to perpetually enjoin the plaintiffs from violating the terms of the restrictions for the remainder of the term of twenty years as provided in the covenant.

At a trial of the cause the circuit court entered a judgment and decree for plaintiffs' decreeing the restriction agreement to be null and void. The court denied the relief prayed for in defendants' answer. From this judgment and decree the defendants appeal.

The evidence in the case warrants the finding that during the year 1923 negroes commenced to move into property on Cook Avenue, east of Vandeventer Avenue. Immediately west of Vandeventer is a colored section of the city. The owners of property east of Vandeventer, especially on Cook and Finney avenues, becoming alarmed at the fact that negroes were moving into their neighborhood and were coming east of Vandeventer Avenue, called a meeting of the property owners. At this meeting the question was discussed as to the advisability of entering into agreements restricting the neighborhood against negroes. Numerous meetings were held and the property owners urged to sign the agreements. The forms were obtained from the St. Louis Real Estate Exchange and these contain the usual provisions found in similar restriction agreements. Solicitors were appointed and evidently made a house to house canvass and attempted to obtain signatures. At a following meeting these solicitors would report as to their success

and also report the names of those who had refused to sign. Other solicitors were then selected to endeavor to obtain the signatures of those who had previously refused to sign. We find from the evidence that at least four of these restriction agreement forms were in circulation covering the various blocks of the district. The evidence also warrants the finding that the general plan was to restrict the entire neighborhood and that the property owners who signed the restriction agreements did so with the understanding that both sides of Cook Avenue and Finney Avenue, in the two blocks between Vandeventer and Grand avenues, were to be in the restrictive zone. The progress of obtaining these signatures was rather slow because of the lack of interest in the plan; many property owners refused to sign. During this time the negroes continued to invade the neighborhood. This seemed to have alarmed the officers of the association. Therefore they instructed the solicitors to immediately obtain all the signatures possible. The solicitors, however, were very unsuccessful. The restriction agreements were then placed on record. One of these agreements, covering a block on Cook Avenue, had been signed by less than a third or only seven property owners. The restriction agreement covering the south side of Finney Avenue and immediately south of plaintiffs' property was filed for record, but the property owners immediately abandoned and disregarded the restrictions. The restrictions on Cook Avenue were never enforced. Within a very short time the entire neighborhood was densely settled by the colored population of the city. At the time of the trial both sides of Cook Avenue and the south side of Finney Avenue between Vandeventer and Spring avenues were settled by negroes, only five homes being occupied by white people. The one-half block in which plaintiffs' property is located withstood the invasion because of the restriction covenant here in question. The evidence conclusively shows that the one-half block in which plaintiffs' property is situated is completely surrounded by negroes. Immediately north of plaintiffs' property and across the alley is a negro apartment building occupied by fifty-four negro families. Immediately east of Spring Avenue is a negro church. This church was obtained by the negroes subsequent to the organization of the Protective Association. Many of the meetings of this association were held in this church prior to the time it was purchased by the negroes. Plaintiffs and a number of the defendants in this case testified they did not know the restriction agreements had been filed for record; that their understanding was that they were not to be filed unless the entire district on both sides of Cook and Finney avenues should be restricted.

The circuit court in its judgment and decree found in part as follows:

"The court doth further find that said paper or instrument in writing, so far as the same attempts to impose restrictions or limitations on the use, occupation, enjoyment, sale, alienation (voluntary or by operation of law), and/or encumbrance by the plaintiffs or by their respective heirs, assigns or grantees or by any other person who might thereafter derive or hold title to said real estate hereinbefore described, or any part thereof, which belongs to the plaintiffs, is a cloud upon the title of the plaintiffs to the real estate hereinbefore described, and the said paper or instrument in writing was and is null and void and of no force and effect for the following reasons, to-wit:

"Because the court doth find that the signature of plaintiff Emma Pickel, in that she signed same under the representation and inducement and with the understanding that all property owners in the neighborhood and district proposed to be restricted, and particularly on Finney Avenue between Krumm Avenue and Grand Avenue, in St. Louis, Missouri, should and would also sign said paper, or a similar paper or papers, that were circulated for signatures of property owners, before the same would be recorded or become binding on those who did sign such paper or papers, and that all property owners in said neighborhood and district did not sign such paper or papers, even on the north side of Finney Avenue, in said block No. 3737 of the city of St. Louis, and

"Because the court doth further find that since the attempt to restrict the said neighborhood and district and the signing of said paper or instrument in writing by said Emma Pickel the whole neighborhood and district has come to be and now is used, occupied and enjoyed by colored people, and has completely changed, so that it is now impracticable and impossible to restrict the neighborhood and district as a desirable place of residence for persons of the Caucasian race and to carry the intention of restricting the neighborhood and district against its use or occupancy by colored people, including the north side of Finney Avenue, in said block No. 3737."

The Circuit Court also found that the instrument bearing plaintiff Emma Pickel's signature was materially altered and changed after Emma Pickel had signed the same. That the alteration was made without her consent or knowledge, rendering the instrument null and void.

Defendants' assignment of errors is as follows:

"1. The court erred in finding for plaintiffs on the evidence and in dismissing defendants' cross-petition.

"2. The court erred in admitting testimony of the contents of the alleged prior written covenant in the absence of a sufficient showing that such instrument was either lost or destroyed, and also

in the absence of any showing of any search or diligence to procure same, and without even a notice to produce.

"3. The court erred in refusing to admit the testimony of the witness Katherine Jones to the effect that the plaintiff Emma Pickel told the witness that the covenant would be binding upon her if she signed it and said nothing to witness about it being necessary to procure the signatures of 100 per cent of the property owners."

We are disposing of the assignment of errors in reverse order. In the third assignment defendants contended that the court erred in rejecting testimony offered by defendants, which, if true, tended to prove that plaintiff Emma Pickel, made statements prior to the trial inconsistent with her testimony. This being an equitable proceeding we will dispose of the case and consider the evidence as though it had been admitted in the circuit court. [Lindhorst v. Orphan Asylum, 231 Mo. 1. c. 389; Vining v. Ramage, 319 Mo. 65, 3 S. W. (2d) 1. c. 722, and cases cited.] The offer of proof is as follows:

"MR. O'MALLEY: We offer to prove by this witness that she did have a conversation with Mrs. Pickel and that Mrs. Pickel told her that these covenants would be binding on her if she signed it, and that Mrs. Pickel, at that time, said nothing about it being necessary to procure 100 per cent of the property owners to sign the covenant before the same would be binding or would be recorded.

"MR. SIBLEY: I object to that on the grounds stated.

"THE COURT: Sustained."

There is no merit in defendants' second assignment of error. Plaintiffs in their petition specifically charge that plaintiff Emma Pickel signed a written covenant which included the territory on both sides of Finney Avenue within the proposed restricted area. That afterwards some member of the association induced her to sign a second covenant representing to her that the first had been lost or destroyed. This was sufficient notice to defendants that the alleged prior covenant would be brought in question. [22 C. J. 1060, and cases cited.] There was testimony in the record of a prior covenant. A number of witnesses testified they had signed a second covenant on the representation that the first had been lost. One witness testified that the first had been mutilated. Under these circumstances the trial court did not err in admitting testimony tending to prove the boundaries contained in the first covenant. Again the existence or non-existence of a prior covenant is not a vital question in the case. [22 C. J. 1060, sec. 1359.]

The first assignment of error of defendants is that the court erred in finding for plaintiffs on the merits of the case. In considering

this question we are taking into consideration the evidence of witness Katherine Jones as though it had been admitted. The court's finding that the signature of Emma Pickel was obtained under the representation and inducement and with the understanding that all property owners, in the neighborhood proposed to be restricted, should sign the restriction agreement, or one similar thereto, before it became binding on those who did sign, is supported by an overwhelming weight of the testimony and also by the surrounding circumstances. So convincing are the circumstances on that point that we deem it necessary to call attention to only a few salient facts which are inconsistent with any other theory. For instance, when a meeting was called to devise means to protect the neighborhood against negro invasion it was attended by owners of property from both sides of Cook and Finney avenues between Vandeventer and Grand avenues. Not one word of testimony do we find in the record that it was proposed or planned at this meeting or any other meeting to protect only the one-half block here in question. On the contrary the defendants' own testimony establishes the fact that restriction agreements were circulated for the obtaining of the signatures of the property owners in the entire district mentioned. Also that the general talk at these meetings was with reference to protecting the entire neighborhood against negro inhabitants. The president of the association lived on Cook Avenue. Other officers were from different parts of the district. If only the one-half block in question was to be protected, what interest did the president of the association have in such a plan? The majority of those in attendance at these meetings seemed to be property owners on Cook and Finney avenues, other than those in the one-half block in question. What interest could these property owners have to protect at these meetings, except, to try to have the entire neighborhood restricted? Defendants' witness, Mrs. Katherine Jones, testified that Mrs. Pickel solicited her to sign, and she did sign, the covenant. Mrs. Jones lived, at that time, on the south side of Finney Avenue. What became of the covenant signed by Mrs. Jones? Her name is not on the one here in question. Again, what interest did Mrs. Pickel have on the south side of Finney Avenue? Why should Mrs. Jones sign the covenant at Mrs. Pickel's request if only the one-half block here in question constitutes a restricted zone within itself? There is no escape from the conclusion that it was planned and understood at these meetings to have the entire district on both sides of Cook and Finney avenues within one restricted zone, and if that could not be done, then those who signed should not be bound. Subsequent events also strongly support this theory. When the officers in their desperate efforts failed to obtain sufficient signatures to block the stampede of negroes

coming east of Vandeventer Avenue, the restriction agreements were filed for record. Not only the one here in question but similar agreements covering the property on both sides of Cook and Finney avenues. The officers evidently did their very best, but the barrier had been broken and the influx of negroes continued. The property owners abandoned all efforts to further prevent the invasion and sold their property to the negroes. The property owners in the several blocks voluntarily released the restrictions placed on record and no effort was made to enforce them except the one now under consideration. In this case two property owners seek to enforce the covenant. Others were made defendants, but testified for plaintiffs and, also, that they were willing and anxious to release the restrictions. In this one-half block there are two property owners who did not sign the agreement and, therefore, they are not bound.

The very object and purpose of the covenant have been defeated. In fact the conditions in the neighborhood and within the proposed restricted area were changed so radically prior to the time the covenants were recorded that the essential object of the covenants were then totally destroyed. Negroes were at liberty to buy and did purchase and occupy many homes on both Cook and Finney avenues within the proposed restricted district. There is no valid reason why the restrictions should be saddled upon plaintiffs in this case. They are living under the very conditions and surroundings against which the proposed covenant was to protect them.

We hold that under the evidence in this case there was such a radical change of conditions within the proposed restricted zone, after the attempt to restrict the district and before the time of the trial, as to entirely defeat the main purpose of the covenant. The covenant, therefore, should no longer be binding or enforced. [Rombauer v. Compton Heights Christian Church, 328 Mo. 1, 40 S. W. (2d) 1. c. 552, 553; 32 C. J. 212, sec. 328, also page 213, sec. 331 and cases cited; Koehler v. Rowland, 205 S. W. 1. c. 221.] Defendants cite Pierce v. St. Louis Union Trust Co., 278 S. W. 398, as authority for their position. That case, however, is inapplicable to the facts in the case at bar. The basis of the opinion in the Pierce case, supra, may be gathered from a short quotation which we think is the essence of the whole case. At page 408 the court says: "But notwithstanding the assaults of commercial business upon the surrounding neighborhood, the evidence as a whole rather tends to show that Vandeventer Place itself has successfully withstood the advance of the commercial army, and has so far maintained its exclusive character as a single family residential district of the highest class." The Pierce case and the Rombauer case supra, recognize the rule that when the purpose and the object of the restriction have

been destroyed, and especially when that is brought about by a change of conditions within the restricted zone, then the restriction ceases to be binding. The weakness of defendants' position is that it is argued and assumed that the one-half block, covered by the covenant here in question, constitutes the restricted zone. The fallacy of that position, under the facts as disclosed by the evidence, is so apparent that we do not deem it necessary to further comment thereon, except to say that the evidence establishes beyond any question, that the property owners of the entire neighborhood understood, and the plan was, that the covenants covering the blocks on both sides of Cook and Finney avenues, should be considered together and create one restrictive zone. This plan totally failed and was so treated by all parties concerned with the exception of two defendants in this case.

What we have said renders it unnecessary to consider the other ground upon which the lower court rendered its decree in plaintiffs' favor. Our finding, on the merits, is in accord with the learned chancellor who tried the case in the circuit court. It is, therefore, immaterial whether the lower court was right or wrong in holding that there had been a material alteration of the instrument or covenant after it had been signed by plaintiff Emma Pickel.

The judgment, *nisi,* is accordingly affirmed. *Cooley* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All of the judges concur.

ON MOTION FOR REHEARING.

PER CURIAM:—In their motion for a rehearing defendants seem to be alarmed that our opinion in this case nullifies other restrictive zones not here in controversy. We affirmed the judgment of the circuit court. That judgment is binding only on those parties that were named as plaintiffs and defendants.

In our opinion we found that the entire district and neighborhood mentioned is now completely settled by negroes. The defendants challenge that statement as being incorrect and not supported by the testimony. In the first part of the opinion, when speaking of the neighborhood, we made reference to "both sides of Cook and Finney avenues in the two blocks between Vandeventer and Grand avenues." What the writer intended to say was between Vandeventer and Spring Avenue and not Grand Avenue. Krum Avenue is immediately east of Vandeventer and Spring is immediately east

of Krum. A photographic copy of a plat of the neighborhood in controversy and with which we are dealing, is herewith filed and made a part of this opinion. ·The correctness of this plat is not

questioned by appellants. This·is the neighborhood referred to in our opinion. We restate now, as was stated in the opinion, and

the evidence supports the statement, that "at the time of the trial both sides of Cook Avenue and the south side of Finney Avenue between Vandeventer and Spring avenues were settled by negroes and only five homes were occupied by white people."

We have carefully considered the motion for rehearing. Our conclusion is that the judgment of the circuit court on the merits of the case was correct.

The motion for rehearing is therefore overruled. All concur.