GRACE M. SWAIN, LOUIS G. MOHR and OLGA L. MOHR, His Wife, G. F. STEINKRAUS and EMMA P. STEINKRAUS, His Wife, BILLY VAN HINKSON and ALTA HINKSON, His Wife, and NELLIE STROUP v. WILLIAM F. MAXWELL, WILLIAM J. KYLE and BEATRICE KYLE, His Wife, Appellants.—No. 39748.—196 S. W. (2d) 780.

Division One, September 9, 1946

Motion for Rehearing or to Transfer to Banc Overruled, October 14, 1946.

*Arthur D. Scarritt, Arthur N. Adams* and *Arthur N. Adams, Jr.,* for appellants.

450

*Justin D. Bowersock* for respondent.

DOUGLAS, J.—This is a suit in equity to enforce a restriction forbidding the conveyance of the premises at 2905 Park Avenue in Kansas City to a negro. The record shows the restriction was imposed on an area of two city blocks in Kansas City situated between 29th, 30th, Brooklyn and Olive Streets, with Park Avenue separating the two city blocks. The restriction was imposed by written agreement of the various property owners in three separate and successive instruments. In this suit the first agreement, dated November 1, 1928, is involved. It was signed by owners of various parcels of land situated in one city block only, the one bounded by 29th, Olive, 30th and Park Avenue. Twenty-one of the owners of the various parcels joined in this agreement. The restriction imposed by the agreement was to run for fifteen years with an extension of an additional fifteen years unless the parties took steps to terminate the restriction. In 1943, and while the first agreement was in force,

the second agreement was made containing the same restriction and signed by the owners of some sixteen parcels in the other of the two city blocks. Then in 1944 the third agreement was made containing the same restriction and signed by the owners of still five more parcels situated in the city block covered by the first agreement. The three agreements do not cover all the parcels in both city blocks. Some owners in each city block did not sign any one of the agreements. All but three of the parcels situated in the block bounded by 29th, Olive, 30th and Park Avenue are covered by the agreements. However both city blocks are now and have been entirely occupied by white persons. No negro has occupied any parcel in either of the two blocks.

Martha Kuebler signed the first agreement. She owned the premises in question at 2905 Park Avenue. In March, 1945 she conveyed these premises to William F. Maxwell, a white person, who on the same day conveyed them to William J. Kyle and wife, who are colored persons.

Plaintiffs are owners of various parcels in the block bounded by 29th, Olive, 30th and Park Avenue. They are parties to the agreements either originally or as successors in title. By this suit they seek to cancel the deed to the colored persons; to enjoin them from occupying the premises; and to enjoin Maxwell from conveying or renting the premises to colored persons. The trial chancellor entered a decree granting the relief sought for.

The first agreement which imposed the restriction on the premises in question is as follows:

"Know All Men By These Presents, That whereas we, the undersigned owners in fee simple of Real Estate situate in Kidwells Addition, C. H. Pratts Park Ave Add., Henry B. Pains Addition, an additions in Kansas City, County of Jackson, and State of Missouri, do each and all desire that, for the period of fifteen years from and after the 1st day of Nov., A. D., 1928, none of said Real Estate be devised, sold, conveyed, leased, 'subleased' or descend to, or be occupied by, any person or persons of the African race or blood or descent, commonly called negroes; and that, for and during said period of fifteen years, the devises, sales, conveyances, leases and 'subleases,' use and occupation, of said Real Estate in said addition be so accordingly restricted: Now, Therefore, in consideration of the premises and of the mutual covenants, promises and agreements of the undersigned owners hereinafter set forth and contained, we the undersigned present owners of sundry parcels of Real Estate situate in said additions as shown by instruments of record in Jackson County, Missouri, do hereby agree and covenant with, and mutually promise to each other, and bind our heirs, devisees, grantees, lessees, and sub-lessees and ourselves jointly and severally, and the heirs, devisees, grantees, lessees and sub-lessees of each or any of us, that none of the Real Estate now owned by either or any of us and situate in said additions

shall be at any time or times during said period of fifteen years from and after the 1st day of Nov. A. D., 1928, devised, sold, conveyed, leased or 'subleased' to, or occupied by, any person or persons of the African race or blood or descent commonly called negroes, of either mixed or whole blood; and that, if we or either or any of us, or any heir, devisee, grantee, lessee or sub-lessee of either or any of us, during said period of time, shall attempt to, or shall, devise, sell, convey, lease or sublease any of said Real Estate to any person or persons of said African·race or blood or descent or if any person or persons of said African, race or blood or descent commonly called Negroes be permitted to, or shall, occupy any of said Real Estate as tenants, or otherwise at any time during said period, then in any such event either or any of us, or any heir, devisee, grantee, lessee or sub-lessee of either or any of us may enjoin such devisee, sale, conveyance, lease, 'sub-lease' or occupation of said Real Estate or may otherwise sue or pursue any other legal or equitable remedy in any court of competent jurisdiction.

''These restrictions shall remain in full force and effect for fifteen (15) years from the date hereof, and at the end of said period shall become automatically renewed and extended for an additional period of fifteen years, unless the persons owning two-thirds of the front feet abutting on the streets in front of said lots or blocks, above described, shall execute and acknowledge and cause to be recorded, an instrument evidencing their election and intention that said restriction shall not remain in force after the said original period of fifteen (15) years.''

█ The validity of an agreement restricting property from sale or occupancy by negroes has been upheld in this state as one which the parties have the right to make and which is not contrary to public policy. Porter v. Pryor (Mo.), 164 S. W. (2d) 353; Koehler v. Rowland, 275 Mo. 573, 205 S. W. 217; Porter v. Johnson, 232 Mo. App. 1150, 115 S. W. (2d) 529. Other jurisdictions also uphold such a restriction. See Anno. 9 A. L. R., 120, 66 A. L. R., 531, 114 A. L. R., 1237. It is constitutionally valid. Corrigan v. Buckley, 271 U. S. 323, 46 S. Ct. 521, 70 L. Ed. 969. A recent case reviewing the Corrigan case and again upholding such a restriction is Mays·v. Burgess, 147 F. (2d) 869, decided by the United States Court of Appeals for the District of Columbia.

█ The fact a restriction is not created by deed but rests on contract does not affect the right of any party to the contract or his successor in title to sue to enforce the restriction. Moreover, no provision for reentry or forfeiture is necessary to its enforcement. Porter v. Pryor, supra; Rombauer v. Compton Heights Christian Church, 328 Mo. 1, 40 S. W. (2d) 545.

█ In this case appellants argue that the restriction is invalid because the agreements do not cover all the parcels situated in the city

block in question, three parcels being unrestricted. They rely on a well reasoned opinion of the St. Louis Court of Appeals in Thornhill v. Herdt (Mo. App.), 130 S. W. (2d) 175. The court held in that case it was the intention of the parties to the restrictive agreement that *all* the property owners in the district should join in the agreement before the agreement would be binding. Instead of all joining, the owners of only eleven out of the forty-six parcels in the district signed the agreement. Consequently the plan had failed for want of reciprocal obligations on the part of all the property owners as the agreement did not bind those owners who had not joined. Since no owner intended to be bound unless all other owners were bound, no valid restriction was imposed.

But the court also said: ''This is not to say that those who did sign might not, had they been so minded, have set forth their own intention to be bound regardless of who might refuse to sign, nor, if they contemplated the impossibility of obtaining all the desired signatures, that they might not have agreed to be bound upon the contingency that a certain number, but less than the whole, of the property owners should sign. Such a plan, if its effectiveness had been conditioned upon obtaining a sufficiently large number of signatures, might not have been wholly unsuccessful, and in any event the prospect of putting it into execution would have been far more likely than in the case where the signatures of all the owners were required.''

The above statement is applicable to the situation in this case. We do not find it was the intention of the parties that every owner in the entire Kidwell's, Pratt's and Pain's additions, mentioned in the agreement, should become parties before the agreement would be binding on those who did sign it. It is apparent from the record that only a part of Kidwell's addition is included within the area comprising the two city blocks. The record does not show the situation as to the two other additions. But each block does include parts of each of the three additions. The reference to the additions may be properly understood as meaning so much of each addition as found in each city block. The case was tried on an agreed statement of facts so we have no testimony about the intention of the parties as to the scope of the plan. From what they did we gather that the first agreement dated in 1928 was intended to cover only the city block in question because only owners of parcels in that block signed it. In 1943 the second agreement extended the same restriction to parcels in the other of the two city blocks. That agreement expressly described the block by its boundaries, 29th, Park, 30th and Brooklyn Streets, but at the same time referred to the three additions. Then in 1944 the third agreement extended the restrictions to five additional parcels situated in the city block in question also covered by the first agreement. Thus the parties limited the coverage of the restriction to the two city blocks. By the terms of each agreement the obligation imposed

was final and complete on the owners of the sundry parcels who joined in the agreement. The obligation was not contingent even on every owner within each individual city block joining in the agreement. In Pickel v. McCawley, 329 Mo. 166, 44 S. W. (2d) 857 the facts and conditions were different.

At the time the agreements were executed the city blocks were entirely occupied by white persons. The violation attacked in this case is the first one attempted. We can see that a situation could arise in a city block only partly restricted against occupancy by colored persons which would present such a change of condition in such city block as would make it inequitable to enforce the restriction on the part covered. Such is not this case.

Nor does the fact the colored district has steadily moved southward until it now extends to the north side of 29th Street opposite the two city blocks present such a change of condition. In Porter v. Johnson, supra, we had a similar situation under a similar restriction. Also in that case the district to the north of the restricted area had become completely occupied by negroes. The trend of the negro migration was southward, the negro population was increasing, and the district on three sides of the restricted area was occupied by negroes. The court held that since the condition described was outside the restricted district it did not constitute the radical change of condition which defeats the purpose of such a restriction and renders its enforcement inequitable and oppressive.

If no radical change in the condition and use of the restricted property occurs, the circumstances that there have been changes in the territory *surrounding* the covenanted area will not of itself be sufficient to destroy the restrictions. Pierce v. St. Louis Union Trust Co., 311 Mo. 262, 278 S. W. 398; Rombauer v. Compton Heights Christian Church, supra; Porter v. Johnson, supra.

The fact that at the present time property within the city block in question would bring a higher price from a colored person than from a white person is not sufficient by itself to show such a change of condition that equity would withhold relief. Some consideration was given to that fact by the United States Circuit Court of Appeals for the District of Columbia in Hundley v. Gorewitz, 132 F. (2d) 23. But in discussing it the court was careful to point out "the purpose of the restriction had [already] been frustrated." In this state the courts have consistently refused, and correctly so, to nullify a restriction merely because an increment in the value of the property would result thereby. Rombauer v. Compton Heights Christian Church, supra; Pierce v. St. Louis Union Trust Co., supra; Miller v. Klein, 177 Mo. App. 557, 160 S. W. 562; Spahr v. Cape, 143 Mo. App. 114, 122 S. W. 379, 383.

The agreement provides the restriction would be automatically renewed for another fifteen-year period "unless the persons owning

two-thirds of the front feet abutting on the streets in front of said lots or blocks above described'' shall by an instrument declare otherwise. Appellants contend the provision is void. The tenor of their contention appears to be that it places a duty on persons who are not parties to the agreement. Their contention contemplates that the owners of as much as two-thirds of the front feet abutting a street failed to join in the agreement. The record on this point is not exact but it is not important. While the provision is not precisely expressed, it is certainly not so indefinite as to be rendered void. We think its meaning is clear. It must refer only to the persons who are parties to the agreement and to their property. Or, at the most, in the case of Park Avenue to the persons who are parties to the original and supplemental agreements and who own parcels abutting both sides of Park Avenue, if the several agreements are to be construed together. However, the latter proposition need not be decided since none of the parties to the agreements took the required action to end the restriction. The restriction was therefore automatically renewed and continues to cover the premises at 2905 Park Avenue with which we are concerned.

Appellants also contend the agreement does not authorize the cancellation of the deed even though the conveyance violated the restriction. The agreement provides if the restriction is violated any party may seek an injunction or any other equitable or legal remedy. Thus it is the clear intention of the parties that upon a violation or attempted violation, the full force of equity would be available to enforce the restriction. The right to seek full relief in equity would be available even without such a provision.

Enforcement of valid and proper restrictive covenants affecting real property is one of the well-established functions of equity. Equitable principles govern their enforcement. A threatened violation may be restrained by injunction. If the forbidden act has been done a mandatory injunction may be issued to undo it. See Porter v. Johnson, supra. The cancellation of an instrument is peculiarly one of equitable cognizance. In such a case as this cancellation of the deed is necessary to obtain the full and specific enforcement of the restriction.

But, say appellants, the rule that equity will not ordinarily lend its aid to enforce a forfeiture prevents the cancellation of the deed. That rule is well settled but is not applicable since we have no forfeiture here. In the accepted sense of the term forfeiture, the cancellation of a deed by equity does not produce a forfeiture. If it did so the established equitable doctrines would be inconsistent.

A forfeiture imposes a loss. The forfeiture of an estate in property means its loss without compensation. It is the taking away of some preexisting valid right. One of the reasons forfeitures are not favored is that they destroy estates. Generally, a valid estate is destroyed by

forfeiture for the violation of a condition ▮▮▮ either by the omission or commission of some act. But if an estate when acquired is subject to being divested because of inherent defects, subsequent divestiture for such reason does not constitute a forfeiture.

In this case the deed made in violation of the restriction was voidable at the will of the parties to the agreement or their successors. Accordingly, the estate grantee acquired was from its inception subject to divestiture. Therefore, when it was divested the grantee lost nothing in the eyes of the law. A purchaser of property whose deed is canceled is ordinarily awarded the equitable relief to which he is entitled. He is usually entitled to recover what he paid for the property or to be restored to his former position. 12 C. J. S. "Cancellation of Instruments" sec. 81. He is not subjected to the forfeiture of his payments. The grantee in this case may take steps to have his rights determined. On the other hand, cancellation of the deed had the effect of revesting title in the grantor. So the grantor lost no estate. We have a situation where no estate was destroyed, no loss necessarily suffered. Since there was no loss, there was no forfeiture. Accordingly, the cases cited by appellants on the subject of forfeiture are not apposite. Mueninghaus v. James, 324 Mo. 767, 24 S. W. (2d) 1017 is distinguishable on the facts.

We do find in those cases where the intention is clear that a forfeiture should result, equity has enforced it. In Koehler v. Rowland, 275 Mo. 573, 205 S. W. 217 and Edwards v. West Woodridge Theatre Co., 60 App. D. C. 362, 55 F. (2d) 524, forfeitures were decreed for the violations of restrictions against sale or rental of property to negroes.

▮▮▮ The charge that the restriction is an unlawful restrain upon the power of alienation incident to a fee simple title is answered by Koehler v. Rowland, supra, which considered a similar restriction. There the court said:. "It is the rule that an absolute restriction in the power of alienation in the conveyance of a fee simple title is void, but it is entirely within the right and power of the grantor to impose a condition or restraint upon the power of alienation in certain cases to certain persons, or for a certain time, or for certain purposes." In some jurisdictions, however, such a restriction even though only a partial restraint has been held invalid for that reason. See Anno. 9 A. L. R. 120, 66 A. L. R. 531, 114 A. L. R. 1237.

Judgment affirmed. All concur.